## THE GOYER COMPANY v. WILLIAMSON.

### Opinion delivered February 24, 1913.

1. GARNISHMENT—PERSONS SUBJECT TO GARNISHMENT—GOVERNMENT AGENCIES—LEVEE BOARD.—A levee board is an agency of the Government, created for public purposes, and is not subject to garnishment at law. (Page 198.)

2. EQUITABLE GARNISHMENT—LEVEES—SUBCONTRACTOR—INSOLVENCY OF CONTRACTOR.—Although a subcontractor has no lien upon the levee, if he alleges the insolvency of the contractor and that he is without remedy at law, he may in equity, subject the funds in the hands of the levee board, due to the contractor, to the payment of the debt due to him. (Page 199.)

3. MECHANICS LIENS—PUBLIC PROPERTY—LEVEES.—Neither the contractor nor sub-contractor can have a lien upon a levee for labor performed or materials furnished. (Page 199.)

4. CREDITORS' SUIT—LIENS—PRIORITIES.—A subcontractor on the work of constructing a levee has no lien on funds in the hands of the levee board until the filing of his suit in equity, and the filing of such suit does not give him a right to said funds superior to the right of an equitable mortgagee and assignee of the principal contractor, when said mortgage and assignment of the funds due the principal contractor from the board, has been recorded and the assignment turned over to the levee board, before the filing of the suit in equity by the subcontractor. (Page 199.)

5. CREDITORS' SUIT—LIENS—ESTOPPEL.—Where the equitable mortgagee and assignee of funds due a principal contractor, in the hands of a levee board, recognized the rights of a subcontractor, and proposed to pay to the subcontractor the amount the principal contractor agreed to pay him, and after the principal contractor collected amounts due it from the board and had paid them over to the mortgagee, and the mortgagee did pay the subcontractor all amounts due him under his subcontract, and agreed with the subcontractor to pay him the balance due, upon his completion of the work, out of the retained percentage in the hands of the levee board, the mortgagee and assignee is estopped from claiming the percentage retained, as against the subcontractor. (Page 199.)

Appeal from Chicot Chancery Court; *Z. T. Wood,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

This appeal presents a question between Goyer & Company, intervenors in the lower court, and N. C. Williamson, appellee, over a sum of money owing by the Board of Levee Inspectors of Chicot County, Arkansas.

In November, 1910, Williamson filed a suit and attachment against T. S. Shields & Company, in the circuit court of Chicot county and garnished the said board of levee inspectors, alleging that T. S. Shields and John Nystrom, as partners, under the firm name of T. S. Shields & Company, were indebted to him in the sum of $1,628.33 for work and labor done in the construction of a portion of the Sterling enlargement of the levee in Chicot County, filing therewith a statement of the indebtedness. A writ of garnishment was issued and the board admitted an indebtedness of $2,680.21. A demurrer to the complaint was filed and an amended complaint, stating the amount of the indebtedness of

Shields & Company to him and the items thereof, and that the board was indebted to said company in the sum of $1,594.99; that it refused to recognize his rights to the money and that Shields & Co. were insolvent and seeking to deprive him of the compensation for the work and would do so if they were permitted to withdraw the funds leaving the plaintiff remedyless. He alleged that he had a laborer's lien and was entitled to be subrogated to the rights of Shields & Co., who were further indebted to him in other amounts. That the work was completed and that there remained in the hands of the levee board $2,680.21 unpaid on said work and prayed judgment against Shields & Co. for $1,628.33, with interest and that the cause be transferred to the chancery court and upon a final hearing that the sums of money due him be declared a lien on the sums of money in the hands of the board of levee inspectors; that pending the hearing, said levee inspectors be made a party and enjoined from paying any of the sums to Shields & Co. until a final disposition of the cause. A demurrer to this amended pleading was overruled and the cause transferred to the chancery court, with leave to make up proper pleadings after the same had been lodged in that court. An injunction was also granted against the board of levee inspectors, restraining them from paying out as much as $2,000 of the money in their hands. Shields & Co. filed no answer to the complaint. The board of levee inspectors answered that it had in its possession $2,000 held by it to await the result of Williamson's suit as sub-contractor against Shields & Co., as contractors, for the levee work in Chicot county.

The Goyer Company made itself a party and intervened on March 29, 1911. It filed an answer and cross complaint, denying that the board had any sums of money due T. S. Shields & Co., to which Williamson was entitled, denying that he had a laborer's lien upon the funds or debt and his right of subrogation to the rights of Shields & Co. and also denying that Shields & Co. had any right to the money in the hands of the levee

inspectors. It set out that it was a corporation in Mississippi, that it had furnished Shields & Co. money, supplies and outfits for levee construction work and had taken deeds of trust to secure the payment therefor, in which all sums of money due or to become due to said company for levee construction work were assigned to the Goyer Company. These deeds of trust were filed as exhibits to the cross bill. It was alleged also that they were of record in Chicot county, Arkansas, at the time of the sub-contracting of the levee work by the complainant, Williamson. They further alleged that on March 7, 1911, Shields & Co. transferred and assigned to them all the sums of money or accounts due them, or either of them by the Board of Levee Inspectors of Chicot County, naming the amount then due of $3,250 to the Goyer Company and on that date gave an order to the Goyer Company on the board of levee inspectors for said money, or a warrant for the same, exhibiting a copy of the order with the complaint. That on March 11, 1911, said company with Shields & Co. and John Nystrom gave an order to the board to pay said company whatever sum might be due to Shields or Shields & Co. and John Nystrom, reciting that Goyer & Co. had an order for the transfer of the same and this order was filed by Mr. Shields with the board on March 24, 1911, and a copy exhibited with the pleadings, setting up that the said fund was owned by the said Goyer & Co. before the bringing of the suit in the circuit court, the transfer being alleged to have occurred March 29, 1911, and denying that the complainant had any right to the said fund. It prayed that the board of levee inspectors be required to pay the sums over to it, that complainant be denied any right thereto and made its answer a cross bill. Notes and deeds of trust securing them of date June 22, and August 27, were introduced in evidence and contained the following clause:

"It is hereby understood and agreed that the proceeds of all contracts entered into by T. S. Shields & Co., Shields Bros., and Nystrom, or that may hereafter be

entered into by us or either of us or any of us during the life of this contract for levee or other construction work, are hereby assigned to the said Goyer Company, which said proceeds shall be duly applied when collected to the credit of our account and indebtedness to said Goyer Company, as the same may accrue, and if such estimates and proceeds shall not be paid over to said Goyer Company, the said Goyer Company shall have the right to declare all of such indebtedness owing by us to be due, and shall have the right to foreclose the same.''

The deed of trust of June 22, 1909, was filed for record on July 7, 1909, in Chicot county, and the one of August 22 was filed there on September 27, 1909, for record. It was agreed that Shields Bros., and Nystrom owed the Goyer Company $19,906.43 on account; that copies of the order attached to the answer and the assignment of Shields & Co. of $3,250, or whatever might be due them by the board of levee inspectors were copies of the original.

Williamson testified that he was a resident of Louisiana, sub-contracted a part of the Sterling enlargement of the Chicot levee from T. S. Shields & Co. and the work he did under the contract amounted to $9,599.79 and that said company lacked paying for the work and still owed balance thereon of $1,628.33. That Shields & Co. contracted with the board of levee inspectors and that there was on November 10, 1911, ten per cent of the contract price retained by the board and three cents per cubic yard on 27,967 yards of dirt removed in making the drainage ditch, the contract price for the removal being twenty-one cents, of which amount eighteen cents had been paid. He also stated that he had a conversation with Edmond Taylor, general manager of the Goyer Company, in the presence of T. S. Shields, and that Taylor agreed to pay him all this retained percentage, admitted at that time to be $1,000, approximately.

The testimony shows that all the money he had received for the work done under the sub-contract had

been first paid to Shields of Shields & Co. by the board, by him turned over to the Goyer Company and by the Goyer Company to him, Williamson. There had been some trouble between him and Shields about the collection of certain of the money, after Shields had made a collection from the board and lost a certain sum of money dealing in cotton futures and failed to turn the collection over to the Goyer Company. He tried to get Shields to go with him afterwards to the Goyer Company and make satisfactory settlement, but Shields disliked to go, claiming that if Taylor, the manager of the company, knew he lost money dealing in cotton futures that he would take his outfit away from him and close him out entirely, and he went and asked Taylor if he would pay him the money Shields owed him and that Taylor stated he would pay him every cent he had received on the Sterling work, which was his sub-contract under Shields. At the time, there was ten per cent held back on the work completed; that the Goyer Company paid him this ten per cent and Mr. Taylor assured him when the contract was completed he would pay the entire ten per cent held back by the board of levee inspectors, which was approximately $1,000. That Taylor was much put out when he found Shields had been dealing in cotton futures. Taylor and Shields both offered to turn over the entire contract to him; let him draw the money due on the contract on completion of the work, including the percentage retained by the board; that he refused to take the contract because the retained percentage would not cover the amount due him, and had Taylor's assurance that he would get the retained percentage without doing any work, except on his subcontract. Taylor told him the Goyer Company was furnishing all the advances to Shields & Co., enabling them to do their levee work and carry out their contract.

This witness further said that Taylor did not inform him of the assignments by Shields & Co. to the Goyer Company, but that Shields turned over all estimates to them after he collected the money from the levee board.

He stated when he first took the sub-contract with Shields he wrote the Goyer Company, having understood that Shields was tied up with them, and had a reply from them.

Edmond Taylor, general manager of the Goyer Company, testified as to the correctness of the accounts and the amounts due from Shields Bros., from T. S. Shields and John Nystrom to the Goyer Company and the execution of the mortgages and deeds of trust, securing the indebtedness, the assignment thereby of the proceeds arising from the contracts for levee work and that at the time of the execution of the trust deeds the contract between Shields & Co. and the levee board had already been entered into. That Shields & Co. had done business with their company for a number of years and all the property in the deeds of trust had been purchased by money paid and furnished by the Goyer Company. That they had made their bonds for levee contracts, etc. That all the estimates for the levee work were turned over to the Goyer Company by T. S. Shields & Co., under these deeds of trust, except one item, which was used by him without the knowledge or consent of the company in a cotton future deal. That he was authorized to receive the estimates for the Goyer Company, and did it in every instance, except the one mentioned. He said Shields and Williamson came to his office and acknowledged that they had used a check from the Chicot Levee Board in cotton speculation and both insisted that he advance money to Shields so he could make advance to Williamson for the contract for the levee work, with which he had contracted with Williamson; and stated that he said he would not pay out any money until it came into his hands. That he was much put out that some of the money had been used in cotton future speculation and expressed himself so, emphatically, at the time. That Shields had no income, except estimates from the levee board, which were turned over to the Goyer Company, and that all payments of every description which Shields made to Williamson were made through the Goyer Com-

pany with the exception of the $600 used in the cotton future deal and a little cash item of $50. He denied that he told Williamson he would pay him the retained percentage when he completed the work and said:

"I didn't make any such statement to him. I did have a conversation with him, but didn't make the statement that I would pay him $1,000 when he completed his work. I stated to him that I would pay him nothing until the money was collected and paid over to me by Shields, but I did state to him that when all the work was completed on the contract I would pay him $1,000 retained percentage he claimed was owing to him." He said further that Williamson knew of the deeds of trust and the assignments therewith and that all payments to him had to come through the Goyer Company. That he had discussed it with him at the time.

The president of the levee board, I. M. Worthington, stated that the contract for the enlargement of the levee in Chicot county, known as the Sterling enlargement, stations 3950 to 3980 and 4030 to 4035, was let to T. S. Shields & Co. and by them sublet to Williamson, and further that there was ten per cent retained on the entire contract. That he had turned over no money since November 10, 1911, except under order of the court.

The contract of Shields & Co. with the board and the bond for the performance of it, both providing that the company should be responsible for and pay all liabilities incurred in the construction of the levee work, for the labor and materials used in its construction, were introduced in evidence and the Goyer Company was surety on the bond.

The court found that Shields & Co. entered into the contract to construct the levee work, pay for all labor and materials used in the construction thereof; that the Goyer Company became surety on the bond; that after the execution of the contract Shields sublet a portion of the work to Williamson; that the Goyer Company had notice of the sub-contract, assented to it and sold

Williamson all his supplies for which he paid and received money for his work through said company as the work progressed after it had been collected. That he completed his sub-contract and that there remained due on the work done by him for the levee board the sum of $1,591.99, made up of ten per cent reserved by the levee board, until the completion of the Sterling contract and three cents per yard retained on the contract price of removing 27,967 cubic yards of dirt in constructing a drainage ditch, necessary to the work. That the board owed Shields & Co. other sums on the remainder of the levee work besides that due on the Williamson sub-contract. On November 11, 1910, Williamson filed a suit in the circuit court against Shields and had garnishment issued against the board; that a demurrer was sustained to the complaint in the circuit court, amended complaint filed and the cause transferred to the chancery court and by agreement all sums, except $2,000 were paid over by the board to the Goyer Company on the order of T. S. Shields & Co.; that the Goyer Company asked and was allowed to be made party defendant and filed answer in the equity court claiming all the sums in the hands of the levee board due upon the Shields contract by virtue of an assignment from Shields Bros.

The court found that the assignment was sufficiently definite and certain to convey the interest of Shields & Co. in the funds, but that the Goyer Company by its action in approving the sub-contract with the plaintiff, Williamson, and its dealings with him in relation thereto, is estopped from claiming any of the funds due for work performed by him which amount to $1,591.99, until he is paid off and that Shields is indebted to him in the sum of $1,628.33, with interest at six per cent from July 1, 1910, and rendered judgment accordingly.

The Goyer Company appeals from the decree in Williamson's favor against it and the board.

*Wynn, Wasson & Wynn,* of Greenville, Miss., and *N. B. Scott,* for appellant.

The plaintiff below acquired no lien by his garnish-

ment. In this State garnishment proceedings against a public corporation are a nullity. 90 Ark. 118. The only lien plaintiffs acquired was when they filed the amended complaint in the chancery court. *Id.* The assignments in favor of Goyer & Company were prior to the general creditor's lien acquired by the filing of the amended complaint, and these assignments are not too general in their terms. 79 Miss. 650; 86 Miss. 520; 91 Miss. 834; 52 Miss. 653; 51 Ark. 218; *Id.* 410; 52 Ark. 37; 52 Ark. 439; 32 Ark. 390; 92 U. S. 325; 58 Miss. 903.

*W. Garland Streett,* for appellee.

It is not contended that the assignment by Shields & Co. of the proceeds of their contracts was void, but that the word "proceeds" as used could only be construed to mean the profits arising from such contracts after all bills were paid for labor and materials used in the construction of the levees and the carrying out of the contracts therefor. Under the prayer for general relief in the amended complaint, plaintiff in a court of equity will be granted all the relief he may be entitled to, though not specifically prayed for. 39 Ark. 531; 19 Ark. 62; 76 Ark. 551.

It is not material in this case whether or not any right or lien was acquired by the garnishment proceedings, nor whether Shields assigned to appellant before or after the suit was instituted or before or after the cause was transferred to chancery.

Kirby, J., (after stating the facts). It is contended, first, that appellee acquired no lien by his garnishment proceeding in the circuit court and that the assignments from Shields & Co. contained in the deed of trust and also the order from them to the board directing the payment of the balance due upon his contracts to the Goyer Company were made prior to the transfer of the cause to equity and the fixing of the lien by the equitable garnishment and that he acquired no lien against said fund thereby.

The levee board was one created for public purposes and given certain powers and required to perform

certain duties for the public good and was an agency; for the government in fact for such purposes, and, as such, was not subject to garnishment at law.   Upon the transfer of the suit to equity, however, the allegations, of the insolvency of the contractors and that appellee was without remedy at law, he could have subjected the· funds in the hands of the levee board due the contrac‑ tors to the payment of his debt within the doctrine here- tofore announced in *Plummer* v. *School District*, 90 Ark. 236.

Neither the contractor nor the sub-contractor could have had a lien upon the levee constructed for labor per- formed nor materials furnished.   It may also be con- ceded that the intervenor company had valid equitable mortgages and assignments of the funds in the hands of the levee board, due Shields & Co., contractors, for the construction of the levee under his contract with it, and that such mortgages and assignments were made and recorded in Chicot County, at the time Williamson con- tracted with Shields & Co. to do a portion of such levee work.   It is also true that the written assignment of Shields & Co. of the balance of the fund due upon the completed work of date March 7, 1911, to Goyer & Co., was turned over to the levee board by said company be- fore the transfer of this suit to equity.   Under these· conditions, he could not have acquired a superior right to subject any of the funds in the hands of the levee board, due-to Shields & Co., for the construction of the levee to the payment of his debt against Shields & Co. for the construction of the work under his sub-contract, since he could have no lien for any such work done, nor materials furnished nor against the funds in the hands of the levee board until the filing of his creditor's bill in the chancery court.

The testimony, however, shows that at the time of entering into the sub-contract for the construction of certain of the levee work, he notified Goyer & Co., inter- venors herein and mortgagees of T. S. Shields & Co., the principal contractor, of his sub-contract, and there

was no objection to it, upon the part of the intervenor. It is admitted that he bought his supplies from said intervenor company and that all the payments that were made to him for work done under the sub-contract were made through said Goyer & Co. after the estimates of the work had been made, the money collected by Shields, of the firm of principal contractors and turned over to said Goyer & Co. That they had paid him all the amounts so collected, shown to be due for his work under the sub-contract, except in one instance, where Shields had diverted some of the money and lost it in a cotton future deal. Williamson testified that thereafter he went to the Goyer Company for an understanding and settlement and was assured by the manager that he would be paid the amount of the retained percentage under the contract with the levee board, still in its hands, upon the completion of the work, if he would continue until his work was completed. It is true, the manager denies this, but he says: "I stated to him that I would pay him nothing until after the money was collected, and paid over to me by Shields, but I did state to him that when all the work was completed on the contract, and the Goyer Company was paid, I would pay him $1,000 retained percentage, he claimed was owing him." The contract had been completed and all the money due therefor under the contract with Shields & Co. for its construction had been paid to the Goyer Company, so far as the record discloses, except the retained percentage and the amount ordered held by the court's order, subject to the payment of the amount due Williamson under his sub-contract, if he should recover in this suit.

It is true, the testimony does not disclose that the contractor received a greater amount of compensation for the construction of the levee work than he agreed to pay to the sub-contractor upon the portion thereof constructed by him, but it may be assumed that they did, for otherwise there would have been no interest to the contracting firm to make a contract and allow the sub-contractor the same rate of compensation for a portion

of the work that was to be received by the principal contractor for the whole of it.

The chancellor could well have found from the entire course of dealing between the intervenor company and appellee herein that it recognized his sub-contract, expected to pay him the amount that was agreed to be paid by the principal contractor thereunder; that it did pay him all such amounts as were received by him under his sub-contract after the collections thereof by the principal contractor and delivery to them, except in the one instance of the cotton future deal, already mentioned, and that it agreed upon his completion of the sub-contract to pay him the balance due under his contract of the retained percentage thereon in the hands of the levee board. The manager's statement is really not in conflict with this finding. He said, "I did state to him that when all the work was completed on the contract, and the Goyer Company was paid, I would pay him the $1,000 retained percentage he claimed was owing him." He surely could not have expected Williamson to understand from this statement that he meant when all of the contract was completed and all the work was completed on the contract and the Goyer Company had been paid in full all indebtedness owed it by Shields & Co., the principal contractors, that he would then pay the amount of the retained percentage claimed. He certainly did not say that and from his own statement it could well appear that upon the completion of the whole work for the levee board and the final payment therefor by it that the sub-contractor should have the amount of the retained percentage claimed to be due; the Goyer Company, of course, then having received all the money that would come to it or was expected to come to it upon the contract of Shields & Co. after the sub-contract made with Williamson.

Under these circumstances, it would be unjust and inequitable to permit the Goyer Company now to claim and hold this fund when its whole course of dealing showed it expected Williamson to have the money earned

under his sub-contract, when it paid him all such sums as he received thereunder after having collected it through Shields & Co., and promised before the completion of the work to pay him the balance claimed to be due upon payment therefor by the levee board after he had completed it. Intervenors are now estopped to claim this fund as against him.

The decree of the lower court was correct and is affirmed.