## BAYOU METO DRAINAGE DISTRICT *v.* CHAPLINE.

## Opinion delivered April 19, 1920.

1. ATTORNEY AND CLIENT—EQUITABLE GARNISHMENT OF DRAINAGE DISTRICT.—Chancery has jurisdiction of action against a drainage district to have their compensation fixed for organizing the district and to obtain a lien on funds on deposit in a bank, the district holding no other funds, the commissioners not being individually liable and the funds not being subject to garnishment at law.

2. GARNISHMENT—FUNDS OF DRAINAGE DISTRICT.—Funds of a drainage district on deposit in a bank can not be reached by garnishment.

3. DRAINS—ATTORNEY'S FEE.—Acts 1913, No. 177, § 13, providing that the commissioners of drainage districts may employ attorneys and fix their compensation, does not empower the commissioners to compel attorneys to represent the district or to fix arbitrarily their fees after they are employed.

4. ATTORNEY AND CLIENT—COMPENSATION.—Where a drainage district employed attorneys without agreement as to their fee, they were entitled to recover upon a *quantum meruit*.

5. EVIDENCE—OPINION AS TO VALUE OF LEGAL SERVICES.—Attorneys who had done similar work were competent to testify as to the value of legal services rendered.

6. ATTORNEY AND CLIENT—FEE OF ATTORNEY.—In determining what is a reasonable attorney's fee, it is competent and proper to consider the amount and character of the services rendered, the labor, time and trouble involved, the nature and importance of the litigation or business in which the services are rendered, the amount or value of the property involved in the employment, the skill or experience called for in the performance of the services, and the professional character and standing of the attorneys.

7. ATTORNEY AND CLIENT—ATTORNEY'S FEE—CUSTOM.—In determining what is reasonable compensation for an attorney to organize a drainage district, it would be improper to consider as the sole test a custom established by other similar districts to allow a certain percentage of the amount of the bond issue as the compensation for attorney's services, though the amount of the bond issue and the custom in such cases may be considered.

8. APPEAL AND ERROR—CHANCERY CAUSES TRIED DE NOVO.—Appeals from the chancery court are tried *de novo* upon the record before the chancellor.

9. ATTORNEY AND CLIENT—EXCESSIVE FEE.—A fee of $6,000 allowed by a chancellor as fee for organizing a drainage district *held* excessive and reduced to $4,000.

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; modified and affirmed.

*J. B. Reed* and *Wallace Townsend,* for appellants.

1. The chancellor should have granted the motion to transfer to the circuit court. Chancery had no jurisdiction. The suit was for compensation for services rendered and damages for breach of contract and plaintiffs had no lien on the funds from the bond sale. 38 Ark. 397; 109 *Id.* 171; 120 *Id.* 389; 47 *Id.* 86. Nothing was recovered in the suit and the attorney had no lien. 65 Ark. 84; 56 *Id.* 306; 64 *Id.* 438. Plaintiffs had an adequate remedy at law.

2. The funds were not subject to garnishment. The cases in 90 Ark. 236 and 107 *Id.* 189 do not govern this.

3. The fee was agreed upon at $2,000 and the action of the commissioners is not subject to review by the courts unless arbitrary and unreasonable. 127 Ark. 38; 64 *Id.* 152; 52 *Id.* 301; 136 *Id.* 298; 94 *Id.* 380; 90 *Id.* 236; 107 *Id.* 189.

4. The fee is excessive. 106 Ark. 571; 122 *Id.* 14; 127 *Id.* 1.

*Mehaffy, Donham & Mehaffy,* for appellees.

1. The court had jurisdiction. A suit at law would have been unavailing, as no garnishment could be had, and the funds in the bank could not be reached in a suit at law. 107 Ark. 180; 134 *Id.* 109; 7 Atl. 22; 93 N. W. 1008; 50 L. R. A. 787; 17 Fed. 483; 151 *Id.* 165; 65 S. E. 902; 173 Fed. 456; 147 *Id.* 480; 79 Pac. 648; 99 N. W. 674; 49 S. E. 423. The district and commissioners are trustees for the public, and chancery has jurisdiction of trusts. 70 Ark. 189. Having obtained jurisdiction for the purpose, it

was proper for a court of chancery to dispose of all matters before it.    34 Ark. 410; 14 *Id.* 50; 2 *Id.* 158; 99 *Id.* 438; 105 *Id.* 558; 130 *Id.* 107; 129 *Id.* 197.

The funds were trust funds, and a suit at law could not reach them.    The commissioners were not persoanlly liable, nor was the district.    Equity alone had jurisdiction.    70 Ark. 444; 52 *Id.* 541 101 *Id.* 451; 122 *Id.* 366; 136 *Id.* 445.

2.    There was no agreement that the fee should be $2,000, and the courts have a right to fix a reasonable fee. The fee is not excessive.    The commissioners had the right to employ attorneys and fix their compensation. Kirby & Castle's Digest, § 5876.    Six thousand dollars would not be an excessive fee.    122 Ark. 14; 127 *Id.* 1; 4 S. W. 207; 2 R. C. L., §§ 145-6.

Wood, J.    This action was instituted by the appellees against appellants in the Lonoke Chancery Court to recover an attorney's fee.

The appellees alleged that they were appointed by the county court of Lonoke County and also were employed by the commissioners as attorneys for the drainage district; that from the time of the creation of the district until March 29, 1919, they had acted as attorneys for the district and had done all the legal work necessary or proper to be done.    Appellees enumerated the various acts that had been taken by the district in which they performed services as the attorneys; that they prepared all necessary papers and advised the board as to the method that should be pursued, finally resulting in the sale of bonds in the sum of $345,000 and the letting of the contract for the construction of the improvements contemplated in the creation of the district.    They allege that there is now deposited in the Lonoke Bank the sum of $21,000, which money was raised and secured by the appellees in their capacity of attorneys for the district and commissioners at their request and under their directions.    Appellees allege that they had a lien on the fund for the payment of their fee; that on March 29, 1919, the

commissioners refused to pay the attorneys for their services and discharged them. They further alleged that they had successfully defended various suits that had been brought against the district in the county, circuit, chancery, and through the Supreme Court; that it was customary and usual to pay attorneys the amount of 2 per cent. on the bond issue, which in the present case would amount to $6,900; that this sum was a reasonable fee; that they were wrongfully discharged and by reason thereof had been damaged in the sum of $2,500; that neither the commissioners nor the district had any other funds than that already mentioned out of which to pay the fee; that they had no adequate remedy at law.

Appellees prayed for judgment in the aggregate sum of $9,400 and that the bank be restrained from paying out the money deposited in it and that the commissioners be restrained from discharging the appellees until their services had been paid for and that the bank be directed to pay appellees the sum of $9,400.

The appellants moved to transfer the cause to the circuit court. The trial court overruled the motion.

The appellants answered, denying all the material allegations of the complaint except the employment of the appellees by the appellants. They set out in their answer that appellants had refused to pay the appellees because these fees were unreasonable and greatly in excess of the fee for which the appellants contracted with the appellees.

The appellants alleged that the appellees agreed to do all the work necessary to the formation of the district and the completion of the improvements contemplated thereby for the sum of $2,000, which was a reasonable fee for their services; that appellants were ready, willing, and offered to pay the appellees the said sum of $2,000, but that the appellees had refused to accept the same and had instituted suit against the appellants before the completion of the services which they had contracted to render and had thereby voluntarily terminated and breached their contract.

T. M. Fletcher was a large landowner and promoter
of the drainage district. He testified that before the dis-
trict was formed he saw Judge Chapline and discussed
the matter with him and employed him to represent the
district through the completion and performance of the
work; that a fee of $2,000 was agreed upon; that W. P.
Beard was employed at the request of witness to assist
Judge Chapline, but he was not to receive any additional
fee; that Judge Chapline called in Mr. Beard; that a day
or two after the appointment of the commissioners they
were offered the services of an attorney to represent the
district through the completion of the work for the sum
of $2,000. Witness informed the party making the offer
that the commissioners had employed attorneys with
whom they were satisfied and had agreed on a fee of
$2,000. Ten minutes later witness informed Judge Chap-
line of that conversation, and he neither dissented from
or agreed with the statement that the contract for attor-
ney's fee was to be the sum of $2,000. Witness had no
idea that the attorney's fee bill would be for more than
$2,000. Witness had represented to the signers of the
petition, when he was circulating the same, that the at-
torney's fee would be $2,000. The commissioners had
fixed the attorney's fee. The relationship between the
commissioners and the appellees was terminated by a suit
filed by the appellees in the county court for a fee. The
commissioners on April 2, 1919, had a meeting and unan-
imously passed a resolution fixing the sum of $2,000 as a
fee for appellees in full payment for their services. At
the time the witness informed Judge Chapline of the of-
fer of attorneys to represent the district for the sum of
$2,000 witness told Judge Chapline that witness thought
he should have something more than $2,000 in view of
the extended acreage of the district. The commissioners
offered the appellees the sum of $3,450 immediately after
they presented their bill, and witness thought the serv-
ices worth that upon the theory that the relationship with
the attorneys would continue. The commissioners were
perfectly satisfied with the appellees as attorneys, and

were anxious to have them continue and attend to the legal business of the district. The commissioners as a board never fixed a specified sum for the appellees. Witness had the agreement with Judge Chapline in regard to the $2,000 fee before the district was created and before the witness was appointed a commissioner. Witness had discussed with Judge Chapline the character of fees being paid attorneys for their services in similar districts, and he had given the witness to understand that excessive fees had been charged by attorneys, and this attitude of Judge Chapline was one of the chief reasons why he was employed as attorney for the district.

Judge Chapline testified that when the district was created he and Mr. Beard were appointed by the county judge and also by the commissioners. He testified in detail to the services appellees had rendered the district. His testimony shows that they had prepared all the papers incident to the proceedings looking to the completion of the improvement. Among other things, they had tried five cases in the circuit court that were appeals from the county court, involving contests over the assessment of benefits. The district lost the case in the circuit court and appealed to the Supreme Court, where the case was reversed and was afterward compromised and settled in the circuit court. Appellees defended a suit in the chancery court involving the validity of the district, which case was appealed to the Supreme Court and the district was upheld. He denied that he had ever entered into a contract with Mr. Fletcher or the commissioners of the district to represent the district as an attorney for a fee in the sum of $2,000. The appellees figured all the time on a fee of 2 per cent. as a reasonable fee. They thought that the commissioners would allow what had been allowed throughout that territory, and 2 per cent. had been the minimum fee.

The testimony of W. P. Beard corroborated that of Judge Chapline as to the amount of work that had been done by the appellees. He also testified that 2 per cent. was a moderate fee for the services they had rendered.

Nine attorneys testified as experts to the effect that the services rendered by the appellees, as set forth in their testimony, were reasonably worth 2 per cent. of the amount of the bond issue, that would be a reasonable fee for the services rendered down to the time that the bonds were issued and sold, for when the bonds were issued and sold usually the principal work requiring the services of an attorney is at an end. Several of these attorneys had represented similar districts. One of them had been paid a fee of 5 per cent. on a $90,000 bond issue. Another attorney who had promoted several districts and had served in the Legislature and had assisted in passing some of the bills creating the districts, some of which he was serving as an attorney, had received 3 per cent. by agreement with the commissioners and in one district the commissioners gave him 5 per cent. on a $90,-000 bond issue. Another attorney, whose firm represented the purchasers of the bonds for the district and who had large experience in such matters, testified that a fee of 2 per cent. amounting to about $7,000 would be a reasonable fee for the services that had been performed by the appellees.

The court rendered a decree in favor of the appellees in the sum of $6,000, with interest at 6 per cent. from March 29, 1919, and directed that the sum of $7,000 of the funds of the district deposited in the Lonoke County Bank be held for the purpose of satisfying the decree and costs and enjoined the bank from paying out such sum. From that decree is this appeal.

The chancery court had jurisdiction. The purpose of this action was not only to obtain a decree fixing the amount of the indebtedness due from the appellants to the appellee, but also to enforce the payment of the amount of the indebtedness determined by the decree. The complaint alleges, and the undisputed testimony shows, that the district had no other funds than that on deposit in the bank out of which to pay appellees. The commissioners were not individually liable for the attorney's fees. The commissioners were acting for the dis-

trict, and the liability was that of the district. The funds of the district on deposit in the bank could not be reached by garnishment at law.

As we said in *Sallee* v. *Bank of Corning,* 134 Ark. 109-15, "The board of directors of the drainage district was an agency of the Government created for public purposes, and on the ground of public policy was not subject to garnishment at law." See, also, *Plummer* v. *School District No. 1 of Marianna,* 90 Ark. 236; *Goyer Co.* v. *Williamson,* 107 Ark. 189.

Under the allegations and proof, therefore, the appellees had no adequate remedy at law. Indeed, their only remedy was in chancery, since the funds on deposit in the bank belonging to the district were really trust funds.

Appellants contend that the act of the commissioners fixing the fee at $2,000 is conclusive and binding on the appellees under the act of March 13, 1913. Section 13 of that act provides: "The commissioners of drainage districts * * * shall have power to employ such attorneys as may be needed by the district and to fix their compensation." Act 177 of the Acts of 1913, p. 747.

This act confers upon the commissioners the power to employ attorneys, that is to enter into a contract with the attorneys to represent the district and to agree with the attorneys upon the compensation for their services. It certainly does not confer upon the commissioners either the power to compel attorneys to represent the district or to fix arbitrarily the fees of the attorneys after they are employed.

Moreover, under the undisputed evidence in this case the commissioners did not fix the fee of the appellees until after the services, which they had been employed to render, had all been performed. The compensation for their services was fixed by the board at the time they were discharged, not when they were employed. The preponderance of the evidence shows that the appellees were employed and that the compensation to be paid for their services was not stipulated in advance. The ap-

pellees are, therefore, entitled to recover upon *quantum meruit.*

This brings us to the consideration of appellants' contention that the fee allowed by the chancellor was excessive.

If the chancellor had decided the case solely upon the testimony of the attorneys as expert witnesses, his decree should have been for the sum of $6,900 or 2 per cent. of the amount of the bond issue, for none of these witnesses testified that a reasonable fee would be less than that sum, while according to the testimony of some of them the customary fee in similar districts was even a much greater sum. In several of the districts it was shown that the attorneys had been allowed a fee as great as 5 per cent. of the amount of the bond issue. The testimony of these experts was competent, and the trial court doubtless fully considered the same but reached the conclusion, under all the circumstances, that a reasonable fee for the services rendered by the appellees was less than that which the testimony of the experts tended to prove.

The commissioners, as public agents under the statute, as we have seen, are not clothed with arbitrary power in the matter of fixing fees of attorneys. They are acting as trustees for the public, and must have an eye to the interests of those whom they serve—the property owners who pay all the expenses incident to the improvement. They must be guided, in entering into the contract of employment with attorneys and fixing their compensation, by what would be a reasonable compensation for services which the attorneys are actually to render. It was not the purpose of the statute to confer upon the commissioners absolute power to contract with the attorneys for fees that would be exorbitant and unreasonable for the services rendered the district. While the presumption is that these public agents will conscientiously discharge their duties, yet it is not impossible, and indeed is entirely within the range of probability, that unreasonable and unconscionable fees may occasionally be agreed upon between the attorneys and commissioners.

A statute giving the commissioners absolute power in the premises to thus squander the money of the taxpayers, levied for the purposes of making the improvement, would be contrary to public policy.

The chancellor fixed the fee for the services rendered, in this case, at the sum of $6,000.

In *Sain* v. *Bogle*, 122 Ark. 14-22, we said: "In determining what is a reasonable attorney's fee it is competent and proper to consider the amount and character of the services rendered, the labor, time and trouble involved, the nature and importance of the litigation or business in which the services are rendered, the amount or value of the property involved in the employment, the skill or experience called for in the performance of the services, and the professional character and standing of the attorneys." *Davis* v. *Webber,* 66 Ark. 190; 2 R. C. L., p. 1059, § 145. Therefore, in these improvement district cases it is manifestly improper to consider as the sole test the custom, established by other similar districts, to allow a certain percentage of the amount of the bond issue as the compensation for attorney's services. It is, of course, competent to consider the amount of the bond issue and the custom in other similar cases as evidence. But this is not to be taken as the only criterion, and is only to be considered in connection with all the other evidence in determining what is reasonable compensation.

It is the duty of this court on appeal from the judgment of the chancellor to try the cause *de novo* upon the record which was before the chancellor. But neither the chancellor nor the judges of this court should divorce themselves from their general knowledge, observation and experience of such matters, and renounce entirely their own judgment as to what would be a reasonable compensation for the attorneys, when all the elements above enumerated are taken into consideration. *Lilly* v. *Robinson Merc. Co.,* 106 Ark. 571; *Jacoway* v. *Hall,* 67 Ark. 345.

Upon a review of all the testimony and after weighing all the elements above enumerated, which are proper to be taken into consideration in determining the compensation to which the appellees are entitled for their services, we are convinced that the sum of $4,000 is a just and fair remuneration to appellees for services rendered the district.

The decree is, therefore, modified, so as to allow them this sum, and, as thus modified, it is affirmed.