GRAVES BROS., INC., v. LASLEY.

4-3684

Opinion delivered February 4, 1935.

*W. W. Grubbs,* for appellant.

*Brewer & Cracraft,* for appellees.

JOHNSON, C. J. Appellant, Graves Bros., Inc., a foreign corporation domiciled at Memphis, Tennessee, instituted this suit in the Chicot Chancery Court against appellees, alleging, in effect: That for the year 1932 appellee, J. I. Lasley, rented or leased from appellant Usonia Plantation in Chicot County, and agreed to pay as rental therefor for said year the sum of $1,200, upon which there is a balance due of $706.01. That for the year 1933 appellee rented from appellant the same plantation, and agreed to pay as rental therefor fif-

teen bales of cotton of the average weight of 500 pounds per bale; that, when the cotton should have been delivered in the fall of 1933 the market value thereof was eleven and one-half cents per pound or the aggregate sum of $862.50; that no part of said cotton or the proceeds thereof was ever delivered to or paid appellant; that during the year 1933 appellee, Lasley, entered into a contract with the Secretary of the Department of Agriculture of the United States by the terms of which Lasley was required to and did plow up and destroy certain growing cotton upon appellant's plantation, and upon which a landlord's lien existed in favor of appellant; that, in consideration of such destruction of cotton, the Secretary of Agriculture agreed to and did allow appellee Lasley cotton options on 33 bales of lint cotton, and in performance of said contract and agreement said Secretary of Agriculture has transmitted a check to J. P. Hampton and W. S. Houston, agents of the Secretary of Agriculture, payable to Lasley for the sum of $576; that said check is now in the hands of said local agents of the Secretary of Agriculture together with certain other and additional cotton options. The prayer was for judgment against Lasley for the rentals due, and that the check and options be impounded, assigned and subjected to the payment of appellant's landlord's lien.

Appellee Lasley filed a demurrer to the complaint thus filed as follows: First, that the court has no jurisdiction; and, second, that the facts alleged do not constitute a cause of action. The demurrer was sustained by the chancellor, and the complaint dismissed, and this appeal follows.

The court erred in sustaining appellee's demurrer to appellant's complaint, and because of this the case must be reversed and remanded.

Primarily, equity has jurisdiction to enforce a landlord's lien upon the proceeds of crops grown upon leased premises which are in the hands of third parties. We have so expressly decided in a number of cases, among which are *Judge* v. *Curtis,* 72 Ark. 132, 78 S. W. 746; *Murphy*

v. *Myar,* 95 Ark. 32, 128 S. W. 359; *Walker* v. *Rose,* 153 Ark. 599, 241 S. W. 19.

In *Judge* v. *Curtis, supra,* we stated the applicable rule, reading from the second headnote, as follows: "While the remedy of the absolute owner of property converted by another is at law, a mere lienor's remedy in such case is in equity to fix a lien on the proceeds in the wrongdoer's hands."

Neither can the chancellor's order sustaining the demurrer to the complaint be sustained upon the theory that the acts of the Secretary of Agriculture and the tenant, Lasley, or the acts of these parties singly, had the effect of destroying or displacing the landlord's lien upon the proceeds of the cotton crop destroyed. Appellant's landlord's lien upon this cotton crop came into being when the cotton came into existence, and no act or acts of third parties can impair, destroy or displace such lien. *Sevier* v. *Shaw,* 25 Ark. 417; *Adams* v. *Hobbs,* 27 Ark. 1; *Murphy* v. *Myar, supra.*

Under any view, appellant's complaint stated a cause of action against appellee Lasley enforceable in a court of equity, and the trial court was in error in deciding otherwise.

Appellee Lasley urges, as sustaining the chancellor's dismissal of the complaint, that the agents of the Secretary of Agriculture of the United States can not be sued in any of the courts of this State. This question is ancillary to the main suit, but it seems of such importance that we proceed to a decision of it.

Early in this court's history, we announced the doctrine that counties, being subdivisions of the State, could not be garnished at law as such. See *Boone County* v. *Keck,* 31 Ark. 387, wherein the rule was stated as follows: "Public policy, indeed, public necessity, requires that the means of public corporations, which are created for public purposes, with powers to be exercised for the public good, which can contract alone for the public, and whose only means of payment of the debts contracted is drawn from the corporators by a special levy for that purpose, should not be diverted from the purposes for

which it was collected, to satisfy the demands of others than the parties contracted with.''

It will be noted that the rule thus stated and promulgated was put upon the ground of sound public policy, and, without citing additional cases on the subject, it may be said that we have consistently followed, and applied the rule in all subsequent cases which fall within its sphere.

In the subsequent case of *Riggin* v. *Hilliard,* 56 Ark. 476, 20 S. W. 402, 35 Am. St. Rep. 113, we had for consideration a creditor's bill in equity, the purpose of which was to compel the assignment of the debt by the creditor of a county in satisfaction of the demand, and we there stated the facts and law as follows: ''The complaint alleges that the debt is due upon a contract to repair a courthouse. The courts commonly concur in holding that public policy forbids any interference between the county and its contractor under such circumstances if the work is still in progress, for the interference would tend to retard the occupancy of the building. But here the complaint alleges that the work has been completed. There is no longer any public interest to be subserved by withholding payment from the contractor, and no reason for withholding the debt from the reach of the remedy in this sort of proceeding. Judge Dillon goes further, and expresses the opinion that in such a case the ordinary process of garnishment should be allowed against a municipal corporation. 1 Dillon's Mun. Corp., § 101; *City of Laredo* v. *Nalle,* 65 Tex. 359. But the case of *Boone County* v. *Keck,* 31 Ark. sup., is opposed to the view that the legal process of garnishment can be used against a county in any case. For the same reason, it was held in that case that a county could not be made to respond to a creditor's suit supplementary to execution. Nothing else was involved or determined in the case. It was a suit directly against the county; the plaintiff's judgment debtor was not a party to it, and the only relief asked was against the county. In the case at bar the plaintiff's debtor is the party against whom relief is sought, and the county is not sued. Therein lies the cardinal difference between the cases.

"The complaint states a cause of action against Hilliard, and shows a right in the plaintiff to subject the debt due by the county to the satisfaction of his demand. That can be accomplished under proper orders of the court as by a sale or compulsory assignment of the debt for the purpose of applying the proceeds to the satisfaction of any judgment which the plaintiff is entitled to recover."

The crux of the holding in the *Riggin* v. *Hilliard* case, *supra,* was, if the creditor's bill in equity does not interfere with the public interest—and being no longer a public interest to be subserved—sound public policy no longer demands the enforcement of the rule, and that it may be relaxed as equity may determine. The rule, as announced in *Riggin* v. *Hilliard, supra,* has been applied and extended in *Plummer* v. *School Dist. No. 1 of Marianna,* 90 Ark. 236, 118 S. W. 1011; *Goyer Co.* v. *Williamson,* 107 Ark. 189, 154 S. W. 525; *Sallee* v. *Corning Bank,* 134 Ark. 109, 203 S. W. 276; *Bayou Meto Drain. Dist.* v. *Chapline,* 143 Ark. 446, 220 S. W. 807, and a number of other recent cases.

Our holding in *Riggin* v. *Hilliard, supra,* is in accord and harmony with the decisions of the Supreme Court of the United States as evidenced in *Hayward* v. *Andrews,* 106 U. S. 672, 1 S. Ct. 544, where the court said: "If the assignee of the chose in action is unable to assert in a court of law the legal right of the assignor, which in equity is vested in him, then the jurisdiction of a court of chancery may be invoked, because it is the proper forum for the enforcement of equitable interests, and because there is no adequate remedy at law," and in *Smith* v. *Bourbon County,* 127 U. S. 105, 8 S. Ct. 1043, where a similar result was reached though by a different method.

In application of the principles of law thus stated and applying them to the facts here presented, it may be said that the impounding and compulsory assignment of this check to the one rightfully entitled thereto under the laws of this State is no interference with the public interest, for the reason that, when this check is issued and delivered to the local agent of the Secretary of Agricul-

ture for delivery to the payee or the one entitled to the proceeds thereof under the laws of this State, the governmental agencies' interests therein are at an end.

The alleged facts in the instant case demonstrates the wisdom of the rule announced in the *Riggin* v. *Hilliard* case, *supra*. Notwithstanding appellant was the owner of the lands upon which this destroyed cotton was produced, and as such had the burden of paying taxes and effecting improvements thereon, its rights as such owner have been ignored or destroyed by the joint acts of the tenant Lasley and the Department of Agriculture, if appellee's contention be maintained, and appellant has no remedy in law or equity. Such cannot be the law if vested property rights are to receive governmental protection in the future. Under no theory of law, equity, or justice, can one's property be taken or destroyed without compensation, and we cannot conceive that the National Government would lend its aid or assistance to such unwarranted practice. It is not conceivable that the National Government would lend its aid or assistance to the destruction of a taxpayer's property who had every reason to expect its protection, and certain we are that the governmental agency will not undertake to uphold the hands of one seeking to defeat such vested property rights.

Neither can we agree with appellee that *Wilson* v. *Sawyer*, 177 Ark. 492, 6 S. W. (2d) 825, is decisive of the question here under consideration. *Wilson* v. *Sawyer* was put squarely upon the ground that § 22 of the World War Veterans' Act (38 USCA, § 45) prohibited compensation paid thereunder being subjected to claims of creditors. Not so in the instant case. Sound public policy is here invoked, and, when the public interest is appeased, all reason for the rule ceases.

If the governmental agency conceives that the public interest is not at an end in the proceeds of the check in controversy, it may file an answer setting forth the facts upon which it relies, and the chancellor should determine this question upon the facts adduced.

Moreover, although we prefer to put our opinion in this case upon the grounds heretofore stated, we are not

certain that the governmental agency here garnished is such as falls within the general rule prohibiting garnishments against governmental subdivisions. See *Commonwealth Finance Co.* v. *Landis,* 261 Fed. 440; *Haines* v. *Lone Star Shipping Co.,* 268 Pa. 92, 110 Atl. 788.

Our opinion in *Federal Land Bank* v. *Priddy,* 189 Ark. 438, 74 S. W. (2d) 222, is in line with the cases just cited and would be authority for this opinion were it put upon this ground.

Neither can we agree that the conclusions here stated conflict with the general rule as declared by the Supreme Court of the United States in *Buckham* v. *Alexander,* 4 How. 20, and subsequent cases. All these cases rest upon the proposition that garnishment, if allowed, would interfere with the public interest, and do not impair the holding that, when the public interest in the subject-matter ends, the reason for the rule ceases, and that equitable garnishment may then be invoked.

For the reasons stated, the cause is reversed and remanded with directions to overrule the demurrer to the complaint, and to proceed not inconsistent with this opinion.