BURNS *v.* THOMPSON.

4-5989                                          141 S. W. 2d 530

Opinion delivered June 17, 1940.

*J. C. Brookfield,* for appellant.

*Denver L. Dudley,* for appellee.

MEHAFFY, J. On November 24, 1937, the appellee, L. S. Thompson, rented approximately 106 2/3 acres of land lying in Craighead county, Arkansas, from Mrs. J.

L. Burns, and executed and delivered to her the following note:

"Jonesboro, Ark.
Nov. 24, 1937.

"$450.00

"On or before Dec. 1, 1938, I promise to pay to Mrs. J. L. Burns or order, at Jonesboro, Arkansas, the sum of Four Hundred and Fifty Dollars, ($450.00) with interest from maturity at the rate of 6% per annum.

"Notice of protest and presentment is waived. This note is executed in consideration of the rental off of the E 2/3 of SW1/4, 34-14-6, consisting of approximately one hundred and six and 2/3 acres lying in Craighead county, Arkansas.

"It is understood that no right to a lien is waived on the crops grown on said land by the execution and acceptance of this note. Said note to be paid as crops are sold.

"/s/  L. S. Thompson.

"Also and in addition to the above I agree to set out all pecan trees bought by Mrs. Burns for said place, to stake and cultivate and properly care for same, Mrs. Burns to pay for stakes.

"/s/  L. S. Thompson."

This action was instituted by the appellant on August 20, 1938. The appellant filed complaint stating that the appellee Thompson was justly indebted to her in the sum of $376 for rent due upon the crops for the year 1938 on plaintiff's farm in Craighead county, Arkansas. The complaint then describes the farm and continues that she had a lien on the crop now on said farm produced by said defendant during the year for said rent and supplies; that said defendant has removed a portion of the crops grown on said land without paying for the rent as agreed to in the note, and is about to move the rest of said crops without the consent of plaintiff, and prays judgment for $376 and for a writ of attachment on the crops.

The note above copied was attached to the complaint. The writ of attachment was issued, appellant filing a bond signed by herself, and the crop of melons was attached by the sheriff.

On August 31, 1938, the appellant filed a statement alleging that the property attached consisted of 50 acres of young watermelons lying on her farm; that this crop is of a perishable nature and it would be to the best interest of all parties to sell the same and have the proceeds deposited in the registry of the court.

On September 30, 1938, the defendant filed answer and cross-complaint, and denied that he was indebted to the plaintiff, but said that if he was indebted to her in any sum, the note was not due, and the suit should therefore be dismissed. In his cross-complaint he alleged the rental note for $450; that he prepared the land at great expense, planted, cultivated, and prepared to harvest and did harvest certain parts of the crops, consisting largely of watermelons; that on August 10, 1938, he paid plaintiff $80 to be applied on said note; alleged that she brought suit for the sum of $376, and prayed for an attachment and filed a bond without sureties, and that the deputy sheriff levied against all the crops grown by this cross-complainant, which at the time were harvested and ready to sell, and a part was in the field; that plaintiff applied to one of the circuit judges for authority to move said crop, and said authority was granted on condition that she strengthen the bond filed, and one of the attorneys appeared in court and said that the bond had been strengthened. He alleges in his cross-complaint that because of the perishable nature of the crops attached, and because the sale value of said crop depends largely on the time and manner harvested, and available facilities for marketing same, and because of said unlawful attachment, he has been damaged in the sum of $1,595.70 and asks for judgment in that amount.

Appellant filed demurrer to the cross-complaint, alleging that it did not state facts sufficient to constitute

a cause of action. Appellant filed answer to the cross-complaint alleging that the appellee was not damaged by the short time the attachment remained in effect, and she denies that said appellee suffered any damage in the sum of $1,595.70 or in any other sum; that he is still indebted to appellant in the sum of $370, and that upon the release of the attachment, the suit became a simple suit for rent.

A jury was selected to try the case, and after the evidence, the appellant requested certain instructions, as did the appellee, and objections were made by both parties.

The appellant asked for an instructed verdict on the cross-complaint because the evidence was not sufficient to establish any damages. The court thereupon asked attorney for appellant if he wanted an instructed verdict as to the note, and he said he did not.

The court, upon its own motion, instructed the jury fully and submitted to them the following interrogatories:

"No. 1. Question: Did the defendant, Thompson, dispose of any appreciable amount of the crop and fail to account for the proceeds from the sale of the crop, or crops, within reasonable time to the plaintiff, Mrs. Burns?

"Answer: (Yes or No) No.

"/s/ Charlie Barnes, Foreman.

"No. 2. Question: What, if any, damages do you find that the defendant, Thompson, has suffered by reason of the issuance of the writ of attachment in question?

"Answer: $1,000.

"/s/ Charlie Barnes, Foreman."

The court thereupon gave judgment in favor of appellee in the sum of $1,000 less the balance due on the note, which was $370, leaving a difference of $630 for which judgment was given.

There is no conflict in the evidence as to appellant's renting the land to appellee and taking his note for the rent for $450. There is a conflict in the evidence about the amount of damages, but that question was submitted to the jury and its verdict cannot be disturbed.

The appellee, himself, testified in substance that there were about fifty acres of watermelons attached in the field, which were worth about $30 an acre, and some watermelons that had already been gathered; that because of the attachment he lost these melons, which were of the value of $1,595.70.

The testimony of some of the witnesses for appellant tends to show that the damages were less than that. Both the appellant's and appellee's testimony was corroborated to some extent, but as we have already said, the evidence was in conflict, and it was a question for the jury. It would serve no useful purpose to set out the testimony in detail.

There was also some correspondence introduced, but as the only question in the case is whether appellee was damaged because of the attachment of his crop, and the amount of the damages, if any, we deem it unnecessary to set out any other evidence.

As stated by appellant, what was actually done was that the plaintiff was undertaking to collect her rent, and in order to make the collection, she caused the attachment to be issued and levied. The officer who levied the attachment died before the trial; but both parties treated the attachment as if it were properly served and appellant, herself, made application to sell the property. The court granted this on condition that she would strengthen her bond. It was stated that this would be done, but appellant thereafter declined to strengthen the bond, and suggested to the attorney for appellee that she would release the attachment. It was not, however, released.

The appellant, who was the landlord, not only had a right to a lien on the crop, but a right to attachment if

the tenant was about to remove the crop from the premises without paying the rent, or when he had removed it, or any portion thereof, without the consent of the landlord. Section 8853, Pope's Digest.

Before any writ of attachment shall issue, the landlord must file an affidavit as prescribed by § 8854 of Pope's Digest. Section 8856 provides that the attachment may issue before the debt is due.

Appellant contends that the landlord's lien attached as soon as the crops came into existence. In that we agree with appellant.

It was stated in *Murphy* v. *Myar*, 95 Ark. 32, 128 S. W. 359, Ann. Cas. 1912 A, 573: "The lien of the appellee as landlord became a charge upon the crop raised upon the land as soon as it came into existence." *Graves Bros., Inc.,* v. *Lasley,* 190 Ark. 251, 78 S. W. 2d 810.

If the issuing and levying of the attachment caused the appellee to be damaged, as claimed, he had a right to recover the damages caused by the loss of his crop, and this question was fairly submitted to the jury.

It is, of course, unfortunate for appellant that the attachment was issued and caused damage, as found by the jury, but the jury's verdict is conclusive, and the judgment must be affirmed.