## SAIN *v.* BOGLE.

### Opinion delivered January 3, 1916.

1. DRAINAGE DISTRICTS—ATTORNEYS' FEES.—The attorneys for a drainage district organized under Act 221, Acts 1911, can not be appointed until after the district has been established by the county court, and such attorneys are not allowed any compensation, by the statute, for services rendered prior to that time.

2. DRAINAGE DISTRICTS—ATTORNEYS' FEES.—A drainage district was organized under Act 221, Public Acts 1911; the validity of the organization was tested, and sustained by the chancery court, but almost immediately thereafter the district was dissolved by the Legislature. *Held*, the act contemplated the employment of but one firm of lawyers for the district, and that under the facts, a fee of $1,000 was proper in payment for the services rendered. *Semble*, but other counsel may, in the sound discretion of the court, be employed to aid in litigation against the district.

3. ATTORNEYS' FEES—PROOF.—The testimony of duly qualified witnesses given as expert opinion evidence is admissible on the issue of the value of the services of an attorney, but the opinion evidence of such expert witnesses is not conclusive, such evidence, however, is to be taken into consideration with all other evidence in the case in arriving at a conclusion as to the just and reasonable compensation for the services performed.

4. ATTORNEYS' FEES—REASONABLE FEE—PROOF.—In determining what is a reasonable attorney's fee, it is competent and proper to consider the amount and character of the services rendered, the labor, time and trouble involved, the nature and importance of the litigation or business in which the services are rendered, the amount or value of the property involved in the employment, the skill or experience called for in the performance of the services, and the professional character and standing of the attorneys.

5. DRAINAGE DISTRICTS—ENGINEER'S FEES.—The engineers of a drainage district are entitled only to such fees as are expressly, or by necessary implication, allowed by the statute under which the district is organized, and for work actually done by them for the district.

6. DRAINAGE DISTRICTS—PRELIMINARY SURVEYS—FEE OF ENGINEERS.—It is only when a drainage district is formed that the engineers thereof are entitled to compensation for preliminary surveys.

Appeal from Monroe Chancery Court; *Jno. M. Elliott,* Chancellor; reversed.

*S. S. Jefferies,* for appellants.

There was fraud in the formation of the district in this; Bogle, Thomas & Lee and White & Watson entered into an agreement, which was unlawful and fraudulent, and was carried out. The contract to pay 5 per cent of the cost of construction was improvident and wasteful. Such *jobs* the law will not permit. 3 Mason 405, 415, 418. The attorneys violated their duty to their client as laid down by Judge Story. *Ib.* Our rule in fraud cases is clearly shown in 110 Ark. 335, 347, 348; 33 *Id.* 429-30; Act 279, 1909 and Act 221, 1911.

2. Contracts opposed to open, upright and fair dealings are opposed to public policy. The law will avoid contracts to do an unlawful act * * *, etc. Clark on Contracts, 301; 26 Ark. 445; 63 Ark. 318; 174 U. S. 639; 48 N. Y. 348, 362; 43 *Id.* 147; 2 Wall. 45-56; 21 U. S. 153; 35 Mass. 472-481; 135 U. S. 507; 120 Mass. 501, 147. Contracts against public policy are void. Cases *supra;* 147 N. C. 263; 15 Am. Cases, 41. The duties of a lawyer are fully defined in 73 Ark. 575. "No man can serve two masters * * *." See 4 Cyc. 920, 921, 957 and note 69; 960 and note 81, p. 963.

3. The fees allowed are excessive.

*Taylor, Jones & Taylor,* for White & Watson, appellees.

"The laborer is worthy of his hire."

The fee was shown to be reasonable by actual and expert testimony. No fraud was proven. The chancellor's finding should not be disturbed. The claim was created and incurred by order of the county court in a matter properly chargeable against the district. Acts 1913, p. 903. The testimony is positive and clear there was no collusion; no sinister motive, no fraud nor intended fraud in the agreement. The services were honestly and faithfully performed and the fees are not excessive. The only correct way to solve this question is by comparison and proof of what other persons have received for the same or like services.

*John B. Moore,* and *Thomas & Lee,* for appellees.

Under the act of 1913, p. 902, jurisdiction was given the chancery court to adjust and pay all proper claims. That was the sole purpose. The services rendered were rendered to the district. Such claims are valid. 119 Ark. 188. The district was legally organized, and the chancery court so held, and there was no appeal; that was final. Appellees were not promoters. There was no conspiracy nor fraud, nor collusion.

HART, J. This case came up on an appeal by the Cypress Creek Drainage District from an order of the chancery court allowing an engineer's fee in favor of White & Watson in the sum of $7,500 and an attorney's fee in favor of G. Otis Bogle and Thomas & Lee in the sum of $4,000 in a proceeding to settle up the claims and affairs of the drainage district. The material facts are as follows:

In September, 1911, G. Otis Bogle, as a representative of certain land owners in Monroe County, Arkansas, filed a petition to establish a drainage district running south from Brinkley and to a point near Keevil. The district was to be established under the General Acts of 1909, as amended by the Acts of 1911. See Acts of 1909, page 829, and General Acts 1911, p. 193.

J. B. White, a member of the firm of White & Watson, civil engineers, heard of the contemplated establishment of the district, and went to Brinkley to interview Mr. Bogle on the subject. He asked that his firm be appointed as engineers for the district, under the statute, and Mr. Bogle replied that the district would only comprise twelve or fourteen thousand acres of land, and he did not know whether the land owners whom he represented would be willing to go to that expense. Mr. White replied that on account of the smallness of the district, his firm would not charge anything for a preliminary survey if, in case the district should be formed his firm should be appointed engineers for it.

The preliminary survey was made by Mr. White's firm, and it reported that the proposed district was not

practicable because it had no outlet; that in order to make the proposed district a feasible one, it would be necessary to extend it twenty-five miles further south to obtain an outlet for the water.

During the fall of 1911, certain land owners who owned land south of the proposed district above referred to, went to the firm of Thomas & Lee, at Clarendon, Arkansas, and asked them to prepare a petition for the organization of a drainage district. This district was to run south from Keevil, and was not to contain any land in the district contemplated by the land owners represented by Mr. Bogle. Thomas & Lee put the land owners off for a time, but, upon being pressed to get up a petition, finally agreed to do so. About this time Mr. Bogle came to see them, and after a consultation, it was agreed that a district should be formed which should embrace both the lands in the district first contemplated by the land owners represented by Mr. Bogle and those owned by the parties represented by Thomas & Lee.

On the 10th day of January, 1912, certain land owners in Monroe County filed a petition with the county court to establish a drainage district embracing approximately 150,000 acres of land in Monroe County, Arkansas, the district to be established under the General Act to provide for the creation of drainage districts in this State, approved May 27, 1909, and the act approved April 28, 1911, amendatory thereof.

The petition was prepared by the firms of Thomas & Lee and G. Otis Bogle, and these two firms of lawyers prepared all the papers necessary for the formation of the district. The county court made an order establishing the district on the 11th day of March, 1912, and on the same day appointed G. Otis Bogle and Thomas & Lee attorneys for the district, but this order was not entered of record until the 6th day of April, 1912.

On January 10, 1912, in compliance with the provisions of the statute, a bond was signed by certain land owners and by the aforesaid attorneys, conditioned that

the petitioners would pay the expense of the preliminary survey if the drainage district was not formed.

White & Watson were appointed engineers for the district, and the commisisoners agreed to pay them 5 per cent. for their services. This included the preliminary survey, the locating survey of the drainage ditch, and the supervision of the construction of the proposed improvement. The contract made with the engineers was prepared by the aforesaid attorneys.

After the district was ordered established, the commissioners advertised for bids for the construction of the proposed improvement. A. V. Wills & Son were the successful bidders, and it was proposed to issue bonds in the sum of $350,000 to construct the improvement. Steps looking to the preparation of the contract with Wills & Son were taken by the attorneys, but no formal contract was prepared.

Certain land owners then filed a suit in the chancery court attacking the legality of the formation of the district. This suit was successfully defended by the attorneys for the district, and no appeal was taken from the decision of the chancery court holding that the district was legally organized.

The chancellor rendered his decision while the Legislature of 1913 was in session, and those who opposed the district applied to the Legislature for relief. The Cypress Creek Drainage District was dissolved by the Legislature of 1913, and an act was passed conferring jurisdiction upon the Monroe County Chancery Court to wind up its affairs. The act provided that all parties having claims against the district should be required to present the same to the chancery court for adjudication, and that a receiver should be appointed to collect the tax assessed under the act for the purpose of paying the debts of the district. Section 2 of the act provided that no claims should be allowed except such as were created and incurred by order of the county court in the matters properly chargeable against the district. See Acts of 1913, p. 902.

The court allowed White & Watson $7,500 for their services as engineers for the district; and G. Otis Bogle and Thomas & Lee a fee of $4,000 as attorneys for the district.

It is insisted by counsel for the drainage district that the facts in the record show fraud and collusion on the part of the engineers and attorneys for the district. We do not deem it necessary to set out the facts pertaining to this branch of the case, for in our opinion the facts fall short of showing fraud or collusion as charged.

We are of the opinion, however, that the fees allowed the attorneys for their services and the compensation allowed the engineers are excessive, but our opinion is not based on the ground of fraud or collusion between the attorneys and the engineers. Our conclusion is reached for the reasons which we shall now state:

We shall first take up the question of the attorneys' fees. It may be stated in the outset that, like all other cases, the attorneys must look for pay for their services to those who employ them unless there is some special provision of the statute for their payment otherwise. Section 4 of the drainage act of 1911 provides that the county court shall appoint three commissioners after it has established the drainage district, that upon their qualification the board shall prepare plans for the improvement within the district as prayed in the petition and procure estimates from competent engineers as to the cost thereof. The section further provides that for this purpose the board may employ such engineers and other agents as may be needful, such engineers to give bond as required in section 1 of the act, and that it may provide for their compensation, which, with all other necessary expenditures, including services of such attorneys as the county may employ, shall be taken as part of the cost of the improvement. See Acts 1911, p. 197.

It will be remembered that the act of 1913 gave the chancery court jurisdiction to wind up the affairs of the district and provided that no claims should be allowed except such as were created and incurred by order of the

county court in the matters properly chargeable against said district. This brings us directly to a consideration of what services of the attorneys are properly chargeable against the district.

(1) Section 4 of the drainage statute above referred to is the only section of the drainage act which provides for the employment of attorneys. From a careful reading of that section it is apparent that the framers of the statute did not intend to require the land owners affected by the drainage district to pay the attorneys for their services in getting up the drainage district. It is apparent from the decree of the chancellor and from the record in the case that the attorneys were allowed fees for services in getting up the district. In this the chancery court erred. The attorneys were not and could not be appointed under the statute until after the drainage district was established by the county court. They were appointed on the 11th day of March, 1912, and the statute did not contemplate, as we have already seen, that they should be allowed any compensation for services performed by them prior to that date. The record shows that the only services performed by them after this time was some work done by them looking to the preparation of a contract between the drainage district and A. V. Wills & Son, the successful bidders. No contract between the drainage district and the contractors was ever prepared by the attorneys. The only other service performed by the attorneys was in the defense of the suit in the chancery court brought by certain land owners seeking to attack the legality of the formation of the district. This suit was successfully defended by the attorneys, and almost immediately thereafter the Legislature passed an act to dissolve the district.

(2) When we taken into consideration the services performed by the attorneys which became legal charges against the district, measured by like services performed in other cases, we think the sum of $1,000 would be a reasonable compensation for the attorneys. In making this allowance, we take into consideration that the statute con-

templates the employment of but one firm of attorneys, and compensation is allowed on that basis. See *Seitz* v. *Meriwether,* 114 Ark. 289.

Though we hold that the statute contemplates the employment of but one attorney or firm of attorneys by the county court, we do not wish to be understood as holding that the act prevents the employment of other counsel in the sound discretion of the court in proper cases to aid in litigation against the district. There is nothing in the record, however, from which it could be inferred that additional counsel was necessary in the present case, and in order to charge for the services of more than one firm of attorneys it was incumbent upon the attorneys to show the necessity of the employment of additional counsel, and that such employment was authorized by the county court.

In the case of *Lilly* v. *Robinson Merc. Co.,* 106 Ark. 571, we held that the question of what is a reasonable attorneys' fee for services performed in a case where such inquiry arises is usually one of fact to be determined from the weight of the evidence.

Again, in *Bell & Carlton* v. *Welch,* 38 Ark. 139, it was held that the court or jury required to fix the compensation for an attorney can only assess such fee upon proper proof, which may include the testimony of other attorneys as to what would be a reasonable fee under the circumstances, taking into consideration the value of the services actually rendered. See, also, the case note to 20 Am. & Eng. Ann. Cas. at page 53.

(3)   Though it is settled that the testimony of duly qualified witnesses given as expert opinion evidence is admissible on the issue of the value of the services of an attorney, it is equally well settled that the opinion evidence of such expert witnesses is not conclusive; but such evidence is to be taken in consideration with all other evidence in the case in arriving at a conclusion as to the just and reasonable compensation for the services performed. *Lilly* v. *Robinson Merc. Co., supra,* and case note to 20 Am. & Eng. Ann. Cas., p. 56.

(4)   We think it fairly deducible from our own cases and from the case note above referred to that in determining what is a reasonable attorney's fee, it is competent and proper to consider the amount and character of the services rendered, the labor, time and trouble involved, the nature and importance of the litigation or business in which the services are rendered, the amount or value of the property involved in the employment, the skill or experience called for in the performance of the services, and the professional character and standing of the attorneys.

The record in the case before us shows that Judge Hemingway, a former justice of this court, in behalf of his firm, was present and took part in the trial in the chancery case in which the legality of the formation of the district was involved, and that his firm charged and was allowed $200 for their services.

So, when the principles of law above announced are applied to the facts in this case, we think the sum of $1,000, as above stated, a reasonable compensation to be allowed the attorneys for the services which were a legal charge against the lands of the district.

(5-6)   What we have said in regard to the principles of law governing the compensation to be allowed to attorneys, applies with equal force to the engineers. They are entitled to only such fees as are expressly or by necessary implication, allowed by the statute. Civil engineers were introduced who testified that the engineers in this case were entitled to a much larger fee than was allowed them by the county court, but in arriving at their opinion, they took into consideration the fact that the engineers had performed services in the smaller district which was abandoned because it was not practicable. The engineers were not entitled to anything for services performed by them looking to the establishment of that district. It is only when a district is formed that the engineers are entitled to compensation for preliminary surveys. The bond required shows this to be so. If the district is not formed, the language of the bond required by the statute is that

the signers thereof will pay such expenses. It also appears to us that the experts in their evidence took into consideration the amount of work to be performed by the engineers in the construction of the improvement. No work of this sort was performed by the engineers, and they are not entitled to any compensation for it. An examination of the whole record leads us to the conclusion that the testimony upon this branch of the case was not fully developed. In arriving at the fee to be allowed to the engineers the court should have considered only the services for which they were legally entitled to charge. Under the statute, in fixing the amount to be allowed the engineers, the court should have been governed by the rules and principles of law applicable to the fees to be allowed the attorneys for the district. This was not done by the court, and for that error the judgment in favor of the engineers must also be reversed, and, the testimony on this branch of the case not being fully developed, the cause will be remanded with directions to the chancellor to allow either party a reasonable time within which to take additional proof.

It follows from the views that we have expressed that the decree must be reversed and the cause remanded with directions to the chancellor to render a decree in accordance with this opinion.