SIKES *v.* DOUGLAS.

Opinion delivered February 21, 1921.

1.  HIGHWAYS—DESCRIPTION OF ROAD.—Where 1 Road Laws 1919, p. 400, as amended by unpublished act of 1920, No. 228, described the road as a public road beginning at a point in a certain section of land where the road intersected an existing road, and running in a southwesterly direction through certain towns and to the south county line, and provided that the improvement is to be made upon the described route, or substantially so, "as the same may be designated and determined by the board of commis-

sioners of said road improvement district and the county court," the commissioners were authorized to adopt substantially the route indicated, when approved by the county court.

2. HIGHWAYS—GENERAL DIRECTION OF ROAD—DEVIATIONS.—Where a statute creating a road improvement district described the termini and general direction, and authorized the commissioners to make the improvement upon the described route or substantially so, the commissioners, with the consent of the county court, were authorized to adopt the most practical route between the points designated, though it involved deviations from the general direction.

3. HIGHWAYS—NOTICE OF ASSESSMENT.—Under 1 Road Laws 1919, p. 400, creating a road improvement district, and providing in § 11 that, after the assessors shall have delivered to the president of the board of commissioners their report or list of assessments, the president shall cause a notice to be published describing the land assessed and calling on the landowners aggrieved by reason of the assessments to appear on a day therein named, etc., notice is sufficient though signed by the president, nor is it material that the land is not described as the same was described in the report of the assessors, nor that the amount of the assessments was not stated in the notice.

4. HIGHWAYS—VALIDITY OF ASSESSMENT—FAILURE TO SHOW ADJOURNMENT.—An assessment on a road improvement district is not void because there is no record showing the final adjournment by the board of commissioners after the completion of hearings on the assessments.

5. HIGHWAYS—ATTACK ON ASSESSMENTS—LIMITATION.—An attack on the assessment of benefits in a road improvement district, on the ground that the asssessments were unjust and made on the wrong basis, must be made in a suit instituted within the time allowed by statute.

6. HIGHWAYS—UNREASONABLE COMPENSATION TO ENGINEER—ATTACK BY PROPERTY OWNER.—A landowner within a road improvement district may sue to prevent the enforcement of a contract made by the road commissioners to pay the engineer of the district a grossly excessive and unreasonable compensation; and a paragraph of the complaint alleging that the contract allowed the engineer 5 per cent. of the contract cost of $1,000,000, when 1 per cent. would have been adequate, is not demurrable.

7. HIGHWAYS—AMENDATORY ACT—RATIFICATION OF CONTRACT.—Act of January, 1920, No. 228, amending 1 Road Laws 1919, p 400, creating a road improvement district, in ratifying "all proceedings of the commissioners," referred merely to the regularity of the proceedings; the question of the fairness of the contract of employment of an engineer not being ratified.

Appeal from Benton Chancery Court; *Ben F. McMahan,* Chancellor; reversed.

*E. P. Watson, W. W. Sikes* and *W. O. Young,* for appellant.

1. Act No. 149 creating Road District No. 2, Acts 1919, p. 400, is unconstitutional and void. None except public roads can be improved under the powers given road improvement districts, and these roads must be in existence at the time the district is created, and such roads must be well defined in the act or power given the commissioners to lay out the road and that by consent of the county court, and the facts alleged in the complaint entitle appellant to relief. The Legislature could not pass a special act laying out a road from Garfield to Brightwater. Const., art. 5, §§ 24-5.

2. The act does not describe the road specifically.

3. The proclamation of the Governor calling the special session did not specify that one of the purposes for which it was convened was to amend the special act, nor to ratify and validate the illegal acts of the commissioners.

4. The act takes from the county court jurisdiction over county roads and is void.

5. Notice to the landowners was not given as required by law, and it was signed by proper authority. Page & Jones on Special Assessments, § 752. Nor did the notice specifically describe the tracts of plaintiff's lands that benefits had been assessed against. See section 11 of the act.

The commissioners did not, prior to September 30, 1919, provide by resolution and place of record a resolution that the assessments should be paid in consecutive annual installments and fix the per centum of benefits to be paid for the year 1920. Assessment statutes and proceedings thereunder must be strictly construed and followed. Page & Jones on Taxation, §§ 229, 776.

Plaintiff's lands were not assessed according to the benefits and is arbitrary and void. Page & Jones on Tax-

ation by Special Assessments, §§ 665-7. The assessment is void. *Ib.*, § 665. The contract for engineers' fees was exorbitant and void. Upon the facts alleged in his complaint, appellant was entitled to be heard upon the merits of the case and the chancellor erred in dismissing the complaint.

*Duty, Duty & Nance* and *Tom Williams* and *McGill & McGill, Lee Seamster* and *Sam Peasley,* for appellees.

1. The validity of these two improvement districts is settled in 218 S. W. 381. Act No. 28 validated and cured all defects and irregularities in the formation and organization of the districts attacked. The notice was sufficient. 103 Ark. 452. It was properly signed. 26 R. C. L. 346; 186 U. S. 458; 111 *Id.* 701; 201 *Id.* 245.

2. The suit was brought in time. 3 Sup. Ct. Reporter 863; 213 S. W. 733; Act 149, § 18. See, also, 218 S. W. 381; 130 U. S. 177; 265 Ill. 39; 26 R. C. L. 355 (§ 312); Ann. Cases 1916 A 707.

All other irregularities were cured by the validating act. 83 Ark. 344; *Ib.* 54; 98 *Id.* 113; 112 *Id.* 357. The remedy provided by the statute must be followed. 134 Ark. 292; 137 *Id.* 587; 220 S. W. 56. See, also, 139 Ark. 424; 224 S. W. 622. Appellant can not question the validity of the contract. 222 U. S. 251; 89 Ark. 522. The contract was entered into long before the passage of the curative act and all irregularities were validated. 217 S. W. 258; 134 Ark. 30. As to the manner of assessments the contention of appellant has been adversely decided against him. 125 Ark. 325.

The curative act amounted to a legislative determination that the assessment was fair. Appellant was given his day in court and his remedy was clear under the statute. 139 Ark. 277; 186 U. S. *supra.*

McCulloch, C. J. Appellant is the owner of real estate in a road improvement district in Benton County, designated as Road Improvement District No. 2 of Benton County, created by a special statute enacted by the Gen-

eral Assembly of 1919, at the regular session (vol. 1, Road
Acts 1919, p. 400) and he instituted this action in the
chancery court of that county against the board of com-
missioners of the district, and against the engineer of
the district and the tax collector, to restrain proceedings
under the statute. He attacks the validity of the statute
itself and also the regularity of the proceedings thereun-
der in assessing benefits and in the employment of the
engineer.

This is one of the districts, the validity of which was
assailed in the case of *Easley* v. *Patterson,* 142 Ark. 52,
wherein we upheld the statute. Most of the points of
attack made by appellant on the validity of the statute
were determined adversely to his contention in that case.
The complaint, to which the chancery court sustained a
demurrer, contains twenty-six (26) paragraphs, each at-
tacking the statute or proceedings thereunder on various
grounds. Many of the points of attack are abandoned
here by failure to argue them in the brief. We will dis-
cuss only those points not deemed to have been expressly
determined in the former case cited above.

It is first contended that the statute is void because
the road to be improved is not definitely described, and
because it was not, as alleged, a public road at the time
of the enactment of the statute. This point was decided
against appellant's contention in *Easley* v. *Patterson,*
*supra.*

The amendment enacted at the extraordinary session
in January, 1920 (unpublished act No. 228), described
the road as a public road beginning at a point in a certain
section of land "where said road intersects the Eureka
Springs-Seligman road and running in a general south-
westerly direction through Garfield, Brightwater, Avoca,
Rogers, Lowell and to the south county line" on the line
between two described sections of land. The statute fur-
ther provides that the improvement is to be made upon
the described route or substantially so as to the same
may be designated and determined by the board of com-
missioners of said road improvement district and the

county court of Benton County, Arkansas, and upon the most practical route between the points designated.''

This gives authority to the commissioners to adopt and follow substantially the route indicated and calls into action the judgment of the county court in approving it.

But it is alleged that there is no public road running in a southwesterly direction from Garfield to Brightwater; that the public road from Garfield runs in a westerly direction north of west from Garfield and connects with a public road at Elk Horn Tavern, north of Brightwater; and that the county court has not opened a public road running in a southwesterly direction from Garfield to Brightwater. It will be observed that the statute does not describe the specific direction of the road from Garfield to Brightwater nor any other section of the road, but it describes the general direction of the road from one terminus to the other. There may be deviations from the general direction which would not nullify the description. The commissioners are authorized, with the consent of the county court, to adopt the most practical route between the points designated. There is no allegation that the commissioners have, without the approval of the county court, adopted a route along which they are about to construct a road not opened as a public road. The contention of appellant on this point is therefore unfounded.

It is next contended that the assessment of benefits is void because proper notice was not given so as to afford property owners an opportunity to object thereto. Section 11 of the statute creating the district provides that, after the assessors shall have delivered to the president of the board of commissioners their report or list of assessments, ''the president shall cause a notice to be published in a newspaper published in said county of Benton, for two weeks, describing the land assessed and calling on the landowners aggrieved by reason of the assessments to appear on a day therein named,'' etc.

It is alleged that the notice was signed by the president himself, and the contention is that under the statute

the notice should have been signed by the assessors—that the president was merely authorized to "cause it to be published." This contention is not sound. The statute does not require the assessors to do more than to "place in the hands of the president" the list or report of assessments. The president is required to "cause a notice to be published," which means that he shall give notice by publication in the manner prescribed. It is also alleged that the published notice "did not describe the lands assessed as the same was described in the report of the assessors" and that the notice "did not set forth the amount assessed against each particular tract or parcel of land." The statute requires merely that the land assessed shall be described in the notice. No form of description is prescribed, and it is not essential that the description be in the form adopted by the assessors. All that the statute requires is that there be such description of the land in the notice as is reasonably sufficient to put the owners on notice that their lands have been assessed. The statute does not require that the amount of the assessments be stated in the notice.

It is next argued that these assessments are void and unenforcible because there is, as alleged in the complaint, "no record showing the final adjournment by the board of commissioners" after the completion of hearings on the assessments. The absence of a record of the adjournment does not prevent the assessment from becoming final and complete. In the absence of fraud or concealment, the mere fact that no record of the adjournment was entered on the minutes of the board would not affect the validity of the assessments.

The assessments of benefits are attacked on the ground that they are unjust and were made on the wrong basis; that the assessments on certain railroad property were reduced by the assessors to a sum which operated as discrimination against other property owners and that the amounts exceed the true benefits. These are matters which could only be raised in a suit instituted within the period of time prescribed by the statute. It is too late

now to challenge the correctness of the assessments on those grounds.

In paragraph 25 of the complaint an attack is made on the contract with the engineer, and one of the prayers of the complaint is that the contract be canceled. That paragraph reads as follows: "That part of the overhead expenses for which said excessive assessments of benefits were made to pay, said board of commissioners of district No. 2, on March 7, 1919, at its first meeting and before any plans, specifications or estimates of costs of the proposed improvements had been made, and before said board fully understood the costs of said improvements, said board entered into a written contract with defendant, R. D. Alexander, by which they employed him, as chief engineer of said district, and agreed to pay him five per cent. of the actual cost of constructing the improvements aforesaid, not exceeding the cost of $1,000,000, and four per cent. on all cost of improvements in excess of $1,000,000. That said sum so agreed to be paid said engineer was an exorbitant price. That one per cent. of the amounts aforesaid would be an ample sum for his labor, material and skill."

We are of the opinion that this paragraph states a cause of action to which objections, if any, should have been made by a motion to make more definite and certain, rather than by demurrer. It is stated, in substance, that the contract is for the payment of a grossly excessive fee—that the contract is for payment of five per centum on the contract cost of $1,000,000, whereas, a reasonable fee would be one per centum of such cost.

Appellee, as a taxpayer, has a right of action to prevent the performance of such a contract if it be found to be grossly excessive and unreasonable. *Seitz* v. *Merriwether,* 114 Ark. 289. The commissioners had no authority to enter into a contract for payment of an unreasonable fee to an engineer. *Sain* v. *Bogle.* 122 Ark. 14; *Bayou Meto Drainage Dist.* v. *Chapline,* 143 Ark. 446.

Learned counsel for appellee contend that the special statute (act No. 228) constituted a ratification of the contract with the engineer and a determination by the

Legislature of the fairness and validity of the contract. Not so. The statute only purports to ratify and confirm "all proceedings of the commissioners of road improvement districts." The question of fairness and providence of the contract does not fall within the term "proceedings of the commissioners," which refers merely to the regularity of the proceedings—to the thing which the lawmakers in the first instance might have dispensed with. If it had been intended to approve the substance of the contract made by the commissioners, more appropriate words would have been used.

The demurrer to this paragraph should have been overruled, and, upon answer filed putting in issue the question of reasonableness of the contract, the court should have tried that issue on the testimony presented. For the error indicated in sustaining the demurrer to paragraph No. 25 of the complaint, the decree is reversed and the cause is remanded with directions to overrule the demurrer. In all other respects the decree is affirmed.