VAUGHAN v. WOODRUFF-PRAIRIE ROAD IMPROVEMENT DISTRICT No. 6.

Opinion delivered April 9, 1923.

1. HIGHWAYS—CONTRACT OF ROAD IMPROVEMENT DISTRICT WITH ATTORNEY.—While the commissioners of a road improvement district have the power to make contracts, they are trustees of the property owners, and can make only reasonable ones; and while the court should not substitute its judgment primarily for that of the commissioners, its inquiry should be to determine whether or not the contract is so improvident as to demonstrate its unreasonableness.

2. HIGHWAYS—AMOUNT OF ATTORNEY'S FEE.—A fee of $5,000 paid to the attorney of a road improvement district held, under the circumstances, to be a sufficient compensation for his services.

Appeal from Woodruff Chancery Court, Southern District; A. L. Hutchins, Chancellor; affirmed.

J. W. House, Jr., for appellant.

Appellant was entitled to recover the amount prescribed by his contract of employment, 2 per cent. of the amount of the bond issue, having earned fees amounting to $11,000. The part of the opinion in 143 Ark. 454 applicable to this case supports this contention. Judgment should have been for balance of $6,000 and interest, and the judgment should be reversed and judgment rendered here for that amount.

Roy D. Campbell, for appellee.

Appellant should have been paid only a reasonable fee for his services as attorney by the district, and

any charge in excess of such reasonable fee should be recovered by the district on its cross-appeal. We think also, as appellant appears to, that the law of the case is settled by 143 Ark. 454, which is certainly misinterpreted by appellant. It was shown that a reputable attorney had agreed to attend to all legal affairs of the district and its clerical work also for $1,500. The commissioners, moreover, accepted appellant's own proposition of settlement in full with him for the $5,000 paid, and he is concluded thereby from claiming more. Appellant's conpensation was fixed in advance, regardless of the service he might be required to perform. He only attended three meetings of the board, attended to no important litigation, had his assistant counsel allowed $1,000, and $2,500 would have been reasonable compensation for the entire service rendered. Court should follow rule announced in the Chapline case, reduce allowance to appellant, and render judgment for $3,500 for appellee on its cross-appeal.

*J. W. House, Jr.,* in reply.

A valid contract was made with appellant, and the services were properly rendered and the compensation sued for earned. The district, long after the proposition of settlement was made, and 8 months' more work had been done by appellant, attempted to accept it and bind appellant, which it could not do.

SMITH, J. The Woodruff-Prairie Road Improvement District No. 6 was created by a special act of the General Assembly of 1919, and the commissioners therein named employed appellant as attorney for the district. The testimony shows that appellant accepted the employment reluctantly, and at first demanded a fee equivalent to three per cent. of the construction cost, based on the bonds issued, in payment of his services, but that, at the solicitation of two of the commissioners, he finally agreed to serve as attorney for a fee of two per cent.

The estimated cost of the completed improvement was $583,000, but the first bond issue was only $350,000, and upon selling bonds for that amount the commissioners paid appellant $5,000 in cash. The remaining $2,000 has never been paid.

Appellant was employed in April, 1919, and immediately entered upon the discharge of his duties, but his compensation was not fixed until July thereafter. Later, friction arose between the attorney and the commissioners, although no complaint was made about the manner in which the legal services had been performed. In February, 1920, appellant proposed to resign, and offered then to accept the $5,000 which he had been paid in full for all services rendered up to that date. No formal response was made to this offer until November 1, 1920, at which time the district wrote appellant a letter, accepting the proposition made by him. In the time intervening between appellant's offer in February, 1920, and the acceptance thereof by the district in November, 1920, appellant had continued to serve as attorney, and he refused to accept the $5,000 as compensation in full, and brought this suit for the balance which he claimed as his fee. In this suit he asks not only $2,000 on account of the first bond issue, but $4,000 based upon the second bond issue.

The district answered and denied being indebted to appellant in any sum, and filed a cross-complaint in which it asked the return of $3,500 which had been paid.

It appears appellant performed the services incident to the organization of the road district. He was employed by other improvement districts and served them contemporaneously, and during the time carried on his general practice. His important duties appear to have been advisory and clerical, as the district had but little litigation. A few property owners opposed their assessments on the ground of excessiveness, but this litigation was compromised and settled. The attorney who represented the protesting property owners testified that

a reasonable fee to be charged for that service was from $50 to $75. The only contested litigation the district had was with a railroad running through the district, and special counsel was employed in that case and paid a fee of a thousand dollars. Appellant testified that he attended all the meetings of the board which he was asked to attend, but he did not state the number of these meetings. One of the commissioners testified that appellant attended only three meetings of the board, one of them being the meeting at which he was employed.

Appellant testified that he was active and successful in obtaining an award of $50,000 State aid, of which sum $25,000 was paid. No Federal aid was allowed because, as appellant testified, the commissioners did not sign the application therefor. But it is not made clear just what service appellant performed in securing this State aid award, except to prepare the district's application therefor and to visit the Highway Department in Little Rock on several occasions. Appellant testified that he appeared before the Interstate Commerce Commission in Washington, in a hearing upon the distribution of railroad cars, in opposition to an order which the commission proposed to make, transferring railroad cars east of the Mississippi River, and that, in connection with the trips which he made in the interest of the district, he incurred expenses amounting to $2,000; but this sum was not itemized, and it does not appear what items were included in it, so that we cannot know how much of it was properly chargeable to the district.

Appellant appears to have acted for the district in paying freight bills on material, thereby saving the district demurrage charges which would otherwise have been incurred, as none of the commissioners resided at the place where this freight was being delivered. This service, however, was clerical and not legal, and should therefore be compensated on the basis of clerical services. The district had not only a secretary but also an employee known as "deputy financial agent," and this

officer appears to have looked after most of the clerical and financial affairs of the district.

In opposition to the claim of appellant, testimony was offered that a reputable firm of lawyers offered to do all the legal work for a thousand dollars, or both the legal and clerical work for $1,500, this offer having been made in response to an inquiry from one of the commissioners. When this offer was proposed at a meeting of the board, one of the commissioners objected on the ground that the fee was excessive. The other two commissioners conferred aside and announced their intention to employ appellant.

Appellant's fee was fixed in July, 1919, on a two per cent. basis, and one of the commissioners caused a written protest to be entered on the records of the board against any fee in excess of a thousand dollars. However, the majority view that appellant should be employed prevailed, and he was employed.

Appellant testified that he prepared all the orders of the court in relation to the district, but admitted that the orders relating to the bond issue were prepared by the attorney for the bond buyers, that right having been reserved by them, and the district paid the attorneys for the bond buyers a fee of $400 for this service.

We think no account should be taken of the second bond issue of $200,000 in fixing appellant's fee. This bond issue was sold at a discount of $24,000, which appears to have been the best price obtainable at the time the bonds were sold; but the district does not appear to have received any of the net proceeds of the sale of this issue, except the money advanced at the time the bonds were delivered, to meet an outstanding estimate then due the contractor, and the district is involved in litigation in an effort to collect the balance which the bond buyer did not pay over. We see nothing in this transaction to support appellant's claim for two per cent., or any other sum.

The district paid appellant $5,000 in the beginning, and finally accepted his proposition to allow him to keep that sum as full compensation for all his services, and we think this should have been the end of the matter. This appears to us to have been a reasonable compensation for any services which the record shows were performed. It is true, the district did not accept this proposition for a number of months after it was made, and during this interval appellant did perform some services, but, notwithstanding that fact, we think the offer constituted full compensation when it was made, for during this interval no considerable services were performed. Indeed, the road was not finished, and has not been finished, and for a long period of time only a few matters of detail have required attention.

In the recent case of *Bayou Meto Drainage District v. Chapline*, 143 Ark. 446, we discussed the rule which should be followed in the allowance of attorney's fees in similar cases, and we there said: "The commissioners, as public agents under the statute, as we have seen, are not clothed with arbitrary power in the matter of fixing fees of attorneys. They are acting as trustees for the public, and must have an eye to the interests of those whom they serve—the property owners who pay all the expenses incident to the improvement. They must be guided, in entering into the contract of employment with attorneys and fixing their compensation, by what would be a reasonable compensation for services which the attorneys are actually to render. It was not the purpose of the statute to confer upon the commissioners absolute power to contract with the attorneys for fees that would be exorbitant and unreasonable for the services rendered the district. While the presumption is that these public agents will conscientiously discharge their duties, yet it is not impossible, and indeed is entirely within the range of probability, that unreasonable and unconscionable fees may occasionally be agreed upon between the attorneys and commissioners. A statute giving the commissioners absolute power in the premises to thus

squander the money of the taxpayers, levied for the purposes of making the improvement, would be contrary to public policy."

In the case of *Sikes* v. *Douglas,* 147 Ark. 469, we again said: "Appellee, as a taxpayer, has a right of action to prevent the performance of such a contract if it be found to be grossly excessive and unreasonable. *Seitz* v. *Meriwether,* 114 Ark. 289. The commissioners had no authority to enter into a contract for payment of an unreasonable fee to an engineer. *Sain* v. *Bogle,* 122 Ark. 14; *Bayou Meto Drainage Dist.* v. *Chapline,* 143 Ark. 446."

In the later case of *Bowman Engineering Co.* v. *Ark.-Mo. Highway Dist.,* 151 Ark. 47, the subject was again reviewed and we there said: "The commissioners have power to make contracts, but they are trustees of the property owners, and can only make reasonable ones. The owners of the property have a right to challenge the validity of such contracts by showing that they are unreasonable. Of course, in testing the validity of such contracts, the court should not substitute its own judgment primarily for that of the commissioners, the authority to make the contract being lodged by the lawmakers in the commissioners, but the inquiry of the court is to determine whether or not the contract is so improvident as to demonstrate its unreasonableness."

Under these tests, we think it should be said as a matter of law that any contract to pay appellant more than the $5,000 which he has already received was one beyond the power of the commissioners to make. It is true appellant has rendered some services since he was paid the $5,000; but the question is, what was the value of all the services rendered? In deciding this question we take into account the skill and learning of the attorney (which is not questioned), the responsibility of the employment, the labor, time and trouble involved, the nature and importance of the services rendered, and the results achieved.

None of the road was ever completed, and a part of its funds are so involved that its completion lies in the future, and, while appellant may not be responsible, either personally or professionally, for this condition, it exists, and should be considered in determining what the taxpayers should be called upon to pay. They are supposed to pay for what they get, and should do so, but what they did get should also be taken into account in determining what they should pay.

There was no litigation involving the validity of the district. The only litigation appellant was called upon to attend was a hearing on the protest of two landowners on their assessments. This protest appears to have been settled and adjusted, and the attorney representing the landowners testified that he thought $50 to $75 was a reasonable fee for that service. In the only contested litigation the district had special counsel was employed and paid a fee of a thousand dollars; and special counsel also prepared the court orders in regard to the sale of the bonds. Appellant did certain clerical work; but, as we have said, he should be paid for this work on a clerical basis. Moreover, the district had a financial representative, in addition to its secretary, and it was the duty of those officers to attend to mere clerical matters.

Appellant secured an allowance of $50,000 of State aid, of which $25,000 has been paid. But this is not to be treated as a sum recovered for the district upon which some per cent. thereof could be charged as if a judgment had been recovered and collected. This allowance is presumed to have been made upon some basis adopted for the purpose of determining the merit of the project as a part of the State's highway system, and appellant can charge only for his time and trouble in presenting the district's application.

Appellant has severed his connection with the district, and new counsel has been employed, who must, of course, be compensated for his services, but we do not have before us any question as to what that compensation should be.

244 Vaughan v. Woodruff-Prairie Rd. Dist. No. 6. [158

It suffices here to say that appellant has been paid a sum beyond which it would be an abuse of discretion and power to pay more. We do not feel that we can say as a matter of law that there was no authority to pay the $5,000 which has been paid, so that we affirm the decree of the court below, both on the appeal and the cross-appeal.

McCulloch, C. J. The fact that appellant's relations as attorney for the district were ended by the acceptance of his offered resignation should not be considered in determining the amount of his earned compensation, for it is undisputed that his resignation was not accepted within a reasonable time. He tendered his resignation in February and offered to give up the retained portion of his fee, $2,000, if they would release him, but the commissioners declined to accept the resignation and induced appellant to go on with the work, which he did for a period of nearly ten months. In the meantime he proceeded with preparations for additional bond issue, which would have entitled him to further compensation under the contract.

This a case where there is a contract fixing the amount of the services, and in that respect it is unlike the case of *Bayou Meto Drainage District* v. *Chapline*, 143 Ar. 446, upon which the majority seem to rely in reaching their conclusion. In the Chapline case, there being no contract, it was an original question to be determined by the court in the trial of the suit what fee should be paid, whilst in the present case there was a contract, and the inquiry is confined to the question whether or not the contract was an improvident one so as to justify the court in disregarding it.

In this kind of a case we should start with the assumption that the commissioners have not made an improvident contract—in other words, that they have not disregarded their duty, and, unless the evidence shows that the contract is so grossly improvident as to stamp

it as a fraud, then the action of the commissioners in making such a contract should not be disturbed. I do not understand the law to be that, where there is a contract made by those acting under authority of law, judges are permitted to substitute their own judgment and to pare down the value of services so as to conform to what they would have done if called upon originally to make such a contract.

A contract is the result of negotiation, and a party to it must necessarily consider what the other party is willing to concede in the way of terms. This element of a contract must be taken into consideration in determining whether the commissioners were guilty of making an improvident contract. The agreed price for the services may have been more than the commissioners themselves felt that they ought to pay, and more than we think they should have paid, but this does not necessarily mean that the contract is so improvident in its terms as to justify the court in canceling it on account of fraud. It is undisputed that there was no actual fraud in the execution of this contract. It is shown, without contradiction, that appellant had acted as attorney for other districts at a fee in excess of what was allowed by the commissioners in this instance, and for a time he insisted upon the same commission, that is to say, three per cent. on the bond issue, but very reluctantly reduced it to two per cent. at the earnest solicitation of the commissioners.

The majority opinion seems to minimize the value of appellant's services by emphasizing the fact that much of his work was clerical. It is true that appellant, in his testimony, narrates many instances of purely clerical work, but this was done to show that he more than performed his duty. He was employed as an attorney to perform professional services, and not for the purpose of performing merely clerical services, and his compensation was fixed for that kind of service.

This project involved an expenditure of $350,000 or more, and appellant was engaged in the performance of his services for about a year and a half. No complaint was ever made that his services were unsatisfactory, and no such complaint is made now. Appellant offered to resign because he felt that the compensation was not sufficient, and he offered to give up $2,000 of his fee if the commissioners would accept his resignation, but they refused to accept it, and insisted upon his going on with the work, which he did. It is true that one of the commissioners was opposed at the start to the employment of appellant, and this commissioner wanted to employ another attorney, but the other two commissioners insisted on the employment of the appellant, and, as before stated, there was never any complaint about the character of the appellant's services. The well-established rule is that, "not only the amount and character of the services and the results attained, but also the professional ability and standing of the attorney, his learning, skill and proficiency in his profession and his experience, may be considered in estimating the reasonable value of his services." *Rachels* v. *Doniphan Lumber Co.*, 98 Ark. 529; *Davis* v. *Webber*, 66 Ark. 199; *Bayou Meto Drainage District* v. *Chapline, supra.*

The evidence does not show that the fee fixed by the contract was exorbitant. It is true that the commissioners introduced a witness, an attorney of Woodruff County, who testified that he offered in advance to act as the attorney of this district for a fee of $1,500, and that he thought this was a reasonable fee, but he does not state in his evidence that that was the customary fee for such services. Appellant himself testified in the case, and showed that it was customary to charge at least two per cent. of the amount involved, and that he had in several instances charged three per cent., and that such was the custom. Another attorney in that county testified that he had been engaged in this kind of service, and that the fee fixed in appellant's contract was reason-

able and in accordance with the general custom in the employment of attorneys by road districts. It is certain that the board of commissioners have never considered the fee excessive, and do not so consider it now, for, upon the acceptance of appellant's resignation, they paid the $2,000 which should have gone to appellant under his contract, to another attorney for finishing up the services. Of course, the making of an improvident contract with the last attorney does not justify a previous one of the same character, but it has much force in determining whether or not the first contract was really improvident. I do not think the evidence justifies the cancellation of his contract as being a fraud upon the rights of the district.

Mr. Justice HUMPHREYS concurs in these views.