## HEAGLER & SONS *v.* BIGGS.

### Opinion delivered November 15, 1926.

1. DRAINS—ALLOWANCE OF CLAIMS AGAINST DEFUNCT DISTRICT—BURDEN OF PROOF.—Where a drainage district had been dissolved under Sp. Acts 1921, No. 590, before the assessment of benefits had been completed, and the chancery court, pursuant thereto, found the amount due to the several claimants against the district, the burden was on landowners of the district to show that the allowances were inequitable or unjust.

2. DRAINS—ABANDONMENT—CLAIMS.—Where a drainage district was abandoned before the assessment of benefits was completed, the engineers and attorneys were entitled to recover compensation for their services only on a *quantum meruit* basis.

3. DRAINS—ABANDONMENT—REASONABLENESS OF ALLOWANCE.—In determining the reasonableness of an allowance to engineers made by the trial court upon a *quantum meruit* basis on abandonment of a drainage project, the fact that the engineers' contract with the district provided that, in case of abandonment, they should receive 10 per cent. above the amount actually expended by them, should be considered in determining whether such allowance was fair and just.

4. DRAINS—ABANDONMENT—ATTORNEYS' FEES.—In determining the value of attorneys' services on the abandonment of a drainage project, it is proper to take into account, not only the skill and learning of the attorneys, but also the net results achieved by them.

5.   DRAINS—ABANDONMENT—ALLOWANCE OF CLAIMS.—Evidence *held*
     to sustain findings of the court fixing fees for attorneys at $1,500
     and for engineers at $13,685.48 for services on a drainage district
     that was abandoned.

Appeal from Greene Chancery Court; *P. A. Lasley,* special Chancellor; affirmed.

*Robert E. Fuhr,* for appellant.

*Block & Kirsch,* for appellee.

SMITH, J.   On February 18, 1915, by an order of the county court of Greene County, a small drainage district was established embracing lands on each side of what is known as Locust Creek ditch, including about ten sections of land. Huddleston, Fuhr & Futrell, attorneys, were appointed attorneys for the district. They prepared the papers necessary for the establishment of the district, and found there were three or four sections of land which were embraced in what was known as the St. Francis Drainage District of Greene and Clay counties, an improvement district created by a special act of the General Assembly, which act provided that no other improvement district should be created within its borders, and no further action was taken in the organization of the Locust Creek Drainage District.

In 1917, apparently for the purpose of curing this defect, the General Assembly passed act 357, creating a drainage district which embraced practically the same lands as were included in the order of the county court, with an additional section of land. Under this act the viewers of the original district were named as the commissioners for the new one, and the act creating the St. Francis Drainage District was amended so that the lands of that district might also be included in another drainage district. C. E. Waddell was appointed engineer for the new district, and the same firm of attorneys was named as attorneys for the new district.

A survey was made by Waddell, and a number of meetings were held by the commissioners, and the engi-

neer finally filed a report, in which he stated that the cost of the project would be too great to impose on an area so small, and he recommended that the district be enlarged to include other lands which would, in his opinion, be benefited by the proposed improvement.

For the purpose, evidently, of carrying the recommendations of the engineer into effect, the General Assembly, at its 1919 session, passed act 39, enlarging the district by adding thirty-four sections of land. New commissioners were named in the act of 1919, and, after they had qualified and organized, they employed the firm of W. R. Heagler & Sons as engineers, and the same firm of attorneys was employed as attorneys for the district.

The new engineers made a survey and prepared plans for the proposed improvement, which were filed with the commissioners, and an assessment of benefits was made, based upon these plans.

At this juncture the General Assembly, on the 24th day of February, 1920, passed act 224, enlarging the district so that its area embraced 61,000 acres of land, and included practically all the territory in Greene County between Crowley's Ridge and the St. Francis River. This act reappointed the three commissioners of the previous district, and added two more. After the commissioners qualified, the same firm of engineers continued to do the engineering work and the same firm of attorneys was re-employed to do the legal work.

In the district established under act 39, as amended by act 224, two plans for the reclamation of the lands in the district were submitted by the engineers. The engineers were admonished by the commissioners that previous plans had been found to be impractical, and they were enjoined to profit by the previous failures and to prepare the new plans with great care. A plan was finally adopted, and the commissioners proceeded to assess the betterments based upon the plan adopted, but, before the assessment was completed, the General Assembly, on March 28, 1921, passed act 590, repealing the prior acts creating the district.

The estimated cost of the improvement under the plans finally approved was $1,181,082.60, and the number of acres of land in the district was 61,081.

The engineering problems were shown to be quite difficult, and involved taking care of the run of water from the hills on the one hand and the flood water of the St. Francis River on the other.

The act dissolving the district provided that all claims against the district should be presented to the commissioners of the district within a time limited, and that the commissioners should pass upon and approve such claims as were found to be proper, and the commissioners were required to file with the circuit clerk a certificate showing the demands which had been approved and allowed, and the amounts thereof.

Pursuant to the provisions of the dissolution act, the attorneys presented a bill for $3,000, this bill to include all work necessary to be done in winding up the affairs of the district. The claim was allowed by the commissioners in the sum of $2,750.

The engineers presented a bill for $16,245.59, against which there was a credit of $6,000, leaving the balance claimed of $10,245.59. The commissioners allowed the engineers the sum claimed. In addition, the commissioners approved claims for their own services. Having thus ascertained the amounts for which, in their opinion, the district was liable, the commissioners filed a complaint in the chancery court, in which it was prayed, pursuant to the provisions of the dissolution act, that the sum found by them to be due by the district be declared a lien on the lands of the district, and that an assessment be made against the lands to discharge this indebtedness.

Certain owners of lands in the district intervened in this proceeding, and challenged the allowances made by the commissioners to the engineers and the attorneys and to the commissioners themselves as excessive. The chancery court heard testimony, and reduced the fee of the attorneys from the sum of $2,750 allowed by the

commissioners to the sum of $1,500. The claim of the engineers, with the interest thereon, as allowed by the commissioners, was for $17,761.35, and the court found that this was excessive, and the claim was reduced to $13,685.48. The court found that the claims of the commissioners for their *per diem* were just and equitable, and the intervention as to those items was dismissed, and a decree was entered in favor of the engineers and the attorneys for the amounts stated, and they have appealed.

It thus appears that the question presented is one of fact—whether the chancery court allowed the engineers and attorneys a fair and reasonable compensation for their services.

The case presented is not unlike that of *Gould* v. *Toland*, 149 Ark. 476, 232 S. W. 434, and the principles there announced are controlling here. In that case it was said that, "while much weight must be given to settlements made by the board under the act (of dissolution), they cannot be regarded as final. The effect of the ascertainment and settlement necessarily casts upon the landowners in the district the burden of showing that the allowances were inequitable and unjust." That case is authority also for holding that the engineers and the attorneys must be compensated upon a *quantum meruit* basis.

The engineers presented an itemized statement of their account, which embraced many items, all of which appear to have been allowed except an item which reads as follows: "Engineering services, rendered during period February, 1919, to August, 1921, as per detailed statement, page 12, $2,320."

It appears from the brief of appellees that, when this item is excluded and the interest is calculated on the remaining items, the court allowed all other expenses and charges claimed by the engineers.

It will be remembered that the appellant engineers are not the only engineers who made surveys relating to the proposed project, and it appears also that the above

item covers services rendered to August, 1921, a period of time extending five months after the dissolution of the district.

The contract between the engineers and the district contained a clause in which it was provided that, if it appeared, after completed plans of the proposed improvement had been made, the project should be abandoned on account of the excessive cost, the engineer should be compensated by "the payment to him of the amount of money actually expended in making said survey, plans, estimates and costs, drawings, etc., plus ten per cent. of this amount." It appears that the court, in fixing the sum to be allowed the engineers, took into account this provision of the contract, and allowed this additional ten per cent., but the property owners make no complaint of that action. We need not therefore determine whether this allowance should have been made in ascertaining the sum earned by the engineers in settling with them upon a *quantum meruit* basis in accordance with the rule announced in the case of *Gould* v. *Toland, supra,* but it is at least proper for us to consider this allowance in determining whether a fair and just settlement was made with the engineers.

This item of $2,320 is a comprehensive one, but, as we understand the testimony, numerous charges are included in the itemized statement filed by the engineers between February, 1919, and August, 1921, which would be covered by and included in the general designation of engineering services. We do not know whether this is a duplication or not. It may not be, at least not entirely so, but the court appears to have allowed the engineers all the charges which were itemized, and they were varied and extensive.

We do not review these items, as we think no useful purpose would be accomplished in doing so, but, after considering the testimony and assuming that the court below had in mind our decision in the case of *Gould* v. *Toland, supra,* that the burden was on the landowners of showing that allowances made by the commissioners

were inequitable and unjust, we are unable to say that the conclusion reached by the court below is contrary to the preponderance of the evidence.

As to the attorneys' fees, it may be said that, in determining their value, it is proper to take into account, not only the skill and learning of the attorneys, but also the net results achieved by them. *Vaughan* v. *Woodruff-Prairie Road Imp. Dist. No. 6,* 158 Ark. 236, 250 S. W. 870. It is not questioned that the attorneys have served the district faithfully and well, but it stands as an undisputed fact that the project was terminated by the repealing act of the General Assembly, so that no actual benefits have been received by the landowners. The project did not proceed to the point where an assessment of betterments was approved, and no part of the plans were ever executed. This fact is not controlling in determining what the compensation of the attorneys should be, but it is one which cannot be ignored.

The attorneys attended numerous meetings of the board of commissioners, and no doubt were called upon for opinions on many subjects, but they appear to have actually drawn only one contract, the one being the contract between the district and the engineers. It appears that the attorneys successfully resisted an attempt to eliminate certain lands from the district, but the trial of that question in the court below where it originated was conclusive of the question, as no appeal was prosecuted.

It appears that a suit is necessary against the landowners of the district to enforce the lien which was decreed against the lands of the district to discharge the allowances made pursuant to the act of dissolution, but it also appears that $500 of the $1,500 allowed was allowed for this purpose, and, as we understand it, a single proceeding for this purpose will suffice. It is not contemplated that annual suits will be brought, as occurs in going districts where there are annual delinquencies for the nonpayment of taxes.

It does appear that the fee allowed the attorneys here is a more modest one than has been allowed in other cases which have come before us for review, but each case must be considered on its own merits, and, after a careful consideration of all the testimony, weighed as we have weighed the testimony in regard to the engineers' claim, we are unable to say that the finding of the court below is contrary to the preponderance of the evidence, and we must therefore affirm the decree fixing the fee of the attorneys as well as that of the engineers. It is so ordered.